UNITED STATES of America, Plaintiff-Appellee,

v.

Javier VASQUEZ–GUERRERO, Defendant-Appellant.

No. 76–3009.

United States Court of Appeals, Ninth Circuit.

April 28, 1977.

**918**

Terry J. Knoepp, U. S. Atty., Barton C. Sheela, Jr., Asst. U. S. Atty., argued, San Diego, Cal., for plaintiff-appellee, Barton C. Sheela, Jr., Asst. U. S. Atty., San Diego, Cal., on the brief.

Before BROWNING, CARTER and WALLACE, Circuit Judges.

PER CURIAM:

Vasquez-Guerrero was convicted of conspiracy to transport aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324 and six counts of illegal transportation of aliens in violation of 8 U.S.C. § 1324(a)(2). The only issue on appeal is whether the stop of his vehicle at the Oak Grove Border Patrol checkpoint during which the illegal aliens were discovered was constitutionally permissible. We affirm.

### I

On February 13, 1974, Vasquez-Guerrero was stopped at the Oak Grove checkpoint. Four passengers of Mexican appearance were visible in his vehicle. Upon further examination, two more individuals were found in the trunk. When questioned, all six passengers admitted that they were Mexican aliens who had no legal right to be in the United States. They stated that they had made arrangements with Vasquez-Guerrero in Mexico to be transported to Los Angeles. Vasquez-Guerrero, after being arrested and advised of his rights, also gave a statement admitting his knowledge of and participation in the illegal transportation.

After a motion to suppress the evidence obtained from the aliens was denied, Vasquez-Guerrero was tried without a jury on stipulated facts and was found guilty on all counts.

The Oak Grove checkpoint is located on State Route 79 at Oak Grove, California. It is one of three traffic checkpoints within San Diego County manned on a regular basis by the Border Patrol to intercept vehicles transporting illegal aliens. *United States v. Baca*, 368 F.Supp. 398, 409–12

John T. Sudman, argued, San Diego, Cal., for defendant-appellant.

(S.D.Cal.1973).[1] The other two checkpoints are located on Interstate Route 5, south of San Clemente, and on Interstate Route 15, north of the Temecula River. *Id.* at 409–12. The three checkpoints, operating in conjunction, serve as a control on all vehicular traffic proceeding north from the Mexican border through San Diego County. *Id.* at 410, 416.[2]

The physical arrangement of the checkpoint was described at the suppression hearing as follows:

> As you proceed north on Highway 79 the first thing you come to, on the eastside of the highway, is a sign that says: "Slow. Stop ahead." It's approximately 200 yards from there to our stopsign, and this 200 yards there are ten highway marking cones in the middle of the road. At the checkpoint we have a traffic check van, which is also parked on the eastside of the highway, with three flashing redlights. On the other side of the highway there is a flashing redlight facing traffic coming north. There is an amber going the other way. We have a trailer, toilet facilities, electricity.

At the time Vasquez-Guerrero was arrested, the checkpoint was in operation at least five days per week. During those days, the checkpoint was manned at least 16 hours per day. When manpower was available, agents were on duty 24 hours per day.

## II

In *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the Supreme Court was asked to determine whether a vehicle could constitutionally be stopped at the San Clemente checkpoint even though there was no reason to believe that the particular vehicle contained illegal aliens. To resolve this question, the Court noted that in determining constitutional safeguards applicable in particular situations, the Court "has weighed the public interest against the Fourth Amendment interest of the individual." 428 U.S. at 555, 96 S.Ct. at 3081. *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court then noted that the United States has a substantial interest in controlling the flow of illegal aliens. Carrying out a program of routine stops for brief questioning at permanent checkpoints is effective in support of this interest. 428 U.S. at 556, 96 S.Ct. at 3082. At the same time, routine stops involving brief questioning at permanent checkpoints create only a limited intrusion upon Fourth Amendment interests. This encroachment is limited both in terms of the individual motorist's subjective sense of intrusion and in terms of overall interference with legitimate traffic. 428 U.S. at 559–560, 96 S.Ct. at 3083.

The Court concluded that because of the substantial public interest in maintaining the checkpoints and because there is a minimal intrusion upon Fourth Amendment rights where reasonable procedures are used, stops for brief questioning routinely conducted at reasonably located permanent checkpoints are consistent with the Fourth Amendment and need not be based on indi-

1. In *United States v. Baca*, 368 F.Supp. 398 (S.D.Cal.1973), the district judge held comprehensive factual hearings regarding the checkpoints located within the Southern District of California and made extensive findings of fact. Subsequently, the same district judge was assigned to this case. At the suppression hearing, he explicitly stated that he was relying upon *Baca* in holding that Oak Grove was a permanent checkpoint. Counsel for Vasquez-Guerrero did not object, except to argue that under subsequent cases, the legal conclusion was incorrect. Under these circumstances, we may take judicial notice of the findings of fact in *United States v. Baca*. *See Lowe v. Mc-*

*Donald*, 221 F.2d 228, 15 Alaska 510 (9th Cir. 1955).

2. Because of the barriers provided by the Camp Pendleton Marine Base and the mountains of east San Diego County, all traffic proceeding north from the Mexican border through San Diego County is funnelled through three major highways: I–5, I–15 and State Route 79. *United States v. Baca, supra*, 368 F.Supp. at 410. There are other checkpoints manned by the Border Patrol which screen northerly traffic through Imperial County, the other California county adjacent to the Mexican border. *Id.* at 412–15.

vidualized suspicion, 428 U.S. at 561, 96 S.Ct. at 3084, nor authorized by warrant, 428 U.S. at 565, 96 S.Ct. at 3086.

### III

In this case, Vasquez-Guerrero argues that the rule of *Martinez-Fuerte* does not apply because the checkpoint at Oak Grove is not "permanent" and is not "reasonably located." Instead, he argues, the situation is analogous to a roving patrol stop. Under *United States v. Brignoni-Ponce, supra*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607, a roving patrol stop may be made if the patrolling officer is aware of specific articulable facts, together with rational inferences derived from those facts, that reasonably warrant a suspicion that a vehicle contains illegal aliens. Thus, Vasquez-Guerrero contends that the stop at Oak Grove was illegal, for the agent who effected the stop articulated no specific facts giving rise to a founded or reasonable suspicion.

■ We reject the argument of Vasquez-Guerrero and conclude that the Oak Grove checkpoint was both permanent and reasonably located within the meaning of *Martinez-Fuerte*. Thus a routine stop for brief questioning, such as occurred in this case, is constitutionally permissible. In arriving at this conclusion, we evaluate the same factors which the Court considered critical in *Martinez-Fuerte* and engage in the same balancing process.

■ We believe that the substantial public interest in controlling illegal alien traffic by maintaining a checkpoint at Oak Grove is identical to the public interest furthered by the San Clemente checkpoint. *See United States v. Martinez-Fuerte, supra*, 428 U.S. at 556, 96 S.Ct. at 3082. Like the checkpoint at San Clemente, the Oak Grove station serves to check the flow of illegal aliens into the United States, both by facilitating the apprehension of aliens who have already entered into this country and by deterring others who have not yet entered. Moreover, the Oak Grove checkpoint, because of its strategic location on route 79, serves to insure the effectiveness of the San Clemente checkpoint on Interstate 5 and the Temecula checkpoint on Interstate 15. Without the checkpoint on route 79, the other two checkpoints could be easily circumvented.[3] *United States v. Baca, supra*, 368 F.Supp. at 416.

■ Our next task is to balance the substantial public interest with the potential interference with Fourth Amendment rights. In our view, the intrusion at Oak Grove is essentially the same as that at San Clemente. *See United States v. Martinez-Fuerte, supra*, 428 U.S. at 559–60, 96 S.Ct. at 3083. First, the risk of subjective intrusion, i. e., intrusion upon the individual motorist's sense of well-being and security, is similar. At Oak Grove, there were significant indications that the stop was manned by official personnel acting in the course of their duties. A sign, highway cones and flashing lights provided advance warning of the stop. The traffic check van and the trailer at the site also provided indications of official authorization. Thus, as in *Martinez-Fuerte*, the Oak Grove checkpoint is unlikely to cause great fear or annoyance on the part of legitimate motorists.

3. In *Martinez-Fuerte*, the Court considered whether checkpoint stops must be based only on reasonable suspicion. It concluded that such a requirement would be impractical because the heavy flow of traffic on major inland freeways prevents the particularized inspection required to establish reasonable suspicion. With such a requirement, the benefits of a checkpoint system could not be obtained. Accordingly, the Court rejected a requirement of reasonable suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 543, 562, 96 S.Ct. 3074, 3084 (1976).

Here, too, we believe a reasonable suspicion requirement would be impractical. While traffic was light at the time of Vasquez-Guerrero's arrest, State Route 79 is one of the major routes to the north. See note 2 *supra*. On those occasions when traffic is heavy, smugglers might well be inclined to attempt passage through the checkpoint. Because it would be impractical to modify the quantum of suspicion required depending upon the traffic flow, we gauge the applicable standard to those occasions when traffic is heavy. Thus, as in *Martinez-Fuerte*, we hold that a requirement of reasonable suspicion would be impractical and accordingly reject it.

Second, we conclude that the Oak Grove checkpoint is not objectionable in terms of overall interference with legitimate traffic. *See* 428 U.S. at 559–560, 96 S.Ct. at 3083. When the checkpoint is in operation, it is *always located at the same site*. Due to this permanency in location, motorists may obtain warning that they will be checked at that site rather than elsewhere. Motorists in general will not be taken by surprise. In addition, Oak Grove, like all established Border Patrol checkpoints, is operated so that agents screen only those motorists passing by. *See United States v. Baca, supra,* 368 F.Supp. at 406–07. As the Supreme Court has noted, this minimizes the individual officer's discretionary enforcement activity. *United States v. Martinez-Fuerte, supra,* 428 U.S. at 558–559, 96 S.Ct. at 3083.

▪ The location of a checkpoint is a crucial factor affecting overall interference with legitimate traffic. See 428 U.S. at 556, 562, n.15, 96 S.Ct. at 3082, 3084. Thus, the discretion of the Border Patrol in locating a checkpoint is subject to review. 428 U.S. at 563, 96 S.Ct. at 3085. It has been determined earlier that the traffic flow along route 79 is at one of its lowest points at Oak Grove. *United States v. Baca, supra,* 368 F.Supp. at 412. By locating a checkpoint at Oak Grove, the Border Patrol can carry out the essential task of screening motorists along route 79, thereby insuring the effectiveness of the San Clemente and Temecula checkpoints, and at the same time minimize interference with legitimate traffic. The Oak Grove checkpoint is reasonably located. *See United States v. Martinez-Fuerte, supra,* 428 U.S. at 562 n. 15, 96 S.Ct. at 3084.

Because the public interests and private Fourth Amendment rights involved in this case are indistinguishable from those considered in *United States v. Martinez-Fuerte,* we conclude that the Border Patrol station at Oak Grove is a reasonably located "permanent checkpoint" within the meaning of *Martinez-Fuerte.* Accordingly, we hold that the routine stop of Vasquez-Guerrero, during which the illegal aliens

which he was transporting were discovered, was constitutionally permissible.

AFFIRMED.