## Commonwealth v. Nase

*Edmund G. Flynn, Assistant District Attorney,* for Commonwealth.
*Mark S. Love,* for defendant.

MARSH, *P.J.,* May 7, 1980—This matter concerns defendant's appeal from a summary convic-

tion on a charge of operating an overweight vehicle in violation of section 4941(a) of the Vehicle Code, 75 Pa.C.S.A. §4941(a). The Commonwealth and the defense entered into a stipulation of facts at the hearing held in this matter on February 15, 1980, and have since submitted memoranda of law in the form of letters to this court.

The facts are as follows. On September 28, 1979, the state police stopped the tractor-trailer which defendant was operating and subjected it to a routine weighing at the state police weigh station permanently located on Route 209 in Middle Smithfield Township, Monroe County, Pa. On the day in question *all* trucks proceeding in one direction were required to submit to being weighed. The state police initially weighed the vehicle on scales imbedded in the ground at the weigh station. These underground scales were not certified, and the exact reading is unknown, but this preliminary reading indicated that this particular vehicle's weight exceeded 73,280 pounds, which is the maximum gross weight allowable for vehicles operating, without special permit, upon the highways of this Commonwealth. Thereupon, at the direction of the state police, the vehicle was then re-weighed, axle by axle, on certified stationary scales. At this weighing, defendant's vehicle was found to be 4,890 pounds overweight. Defendant was then arrested on the above mentioned charge.

Defendant raises three issues, which are, to wit: (1) whether the state police may make systematic weighings of vehicles without preliminarily having probable cause for the stop and seizure, (2) whether the state police may require more than one weighing without the driver's consent, and (3) whether the weighmaster, who had been previously certified by the Pennsylvania Depart-

ment of Agriculture, but who at the time of the instant circumstance was not presently certified by that department, was qualified under the act to take the weighing.

The first issue raises a question which apparently has not been considered before by the courts of our Commonwealth. We recognize two basic challenges to the presently considered police activity, one raising a constitutional objection and the other questioning the state police's authority under section 6308(b) of the Vehicle Code, 75 Pa.C.S.A. §6308(b).

May the state police constitutionally subject vehicles to nonarbitrary, systematic weight inspections without the prerequisite of probable cause? While stoppages such as the one in the instant case clearly constitute a seizure under the Fourth Amendment of the Federal Constitution, we note that not all seizures entail the "irreducible requirement" of an individualized suspicion before they are deemed constitutional: United States v. Martinez-Fuerte, 428 U.S. 543, 560-561, 96 S.Ct. 3074, 3084, 49 L.Ed. 2d 1116, 1130 (1976).

In the present circumstance certain prerequisites must be met before the need for probable cause is allayed. The first is that the act of stopping must be nonarbitrary: United States v. McDevitt, 508 F. 2d 8, 10-11 (10th Cir. 1974). Second, the public interest must outweigh the potential interference with Fourth Amendment rights: United States v. Sandoval-Ruano, 436 F. Supp. 734 (S.D. Cal. 1977).*

---

*We note that in Carroll v. United States, 267 U.S. 132, 153-154, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551 (1925), Chief Justice Taft stated for the court that "[i]t would be intolerable and unreasonable if a prohibition agent were authorized to stop

In this circumstance the public's interest is the prevention of injury to public property and the safety of persons traveling on the Commonwealth's highways, as advanced by the setting of maximum weights for vehicles: Com. v. Burall, 146 Pa. Superior Ct. 525, 529, 22 A. 2d 619, 622 (1941). The nonarbitrary nature of the police activity clearly meets the first constitutional hurdle, but does the aforementioned public interest outweigh the intrusion on the individual? We believe it does. The Commonwealth's establishment of systematic road checks in this instance represents a valid exercise of its police power in furtherance of a legitimate public interest. Balancing the Commonwealth's interest against a minor inconvenience to the driver and the minimal instrusion into his privacy, we cannot say that the Commonwealth's action constitutes an unconstitutional infringement on a driver's rights.

We note that in the somewhat analogous situation of a police check for valid driver's license and owner's vehicle registration, the Supreme Court has held that police may not arbitrarily single out and stop a vehicle for such a purpose: Com. v. Swanger, 453 Pa. 107, 112, 307 A. 2d 875, 877 (1973). See Com. v. Fox, 27 Cumberland 9 (1976),

---

every automobile on the chance of finding liquor and thus subject all persons lawfully using the highway to the inconvenience and indignity of such a search." At first glance this would appear to question the propriety or any nonarbitrary stopping of vehicles, since in the situation portrayed by the Chief Justice, all vehicles were to have been stopped for investigation. Having passed the test for arbitrariness, the aforementioned situation would not pass constitutional muster since it would probably fail the balancing of the public interest against the potential interference with individual Fourth Amendment rights.

which allowed the systematic stopping of vehicles for license and registration checks.

The question whether the state police had authority under section 6308(b) of the Vehicle Code is indirectly related to the decisions in Swanger and Fox in that both were decided while the repealed Vehicle Code, Act of April 29, 1959, P.L. 58, sec. 101 et seq., 75 P.S. § 101 et seq., was still in effect. Pursuant to section 1221(a) of the repealed act, a driver was required to stop upon request or signal from any uniformed police officer, and to provide or exhibit, among other things, his owner's registration and driver's license. Pursuant to section 6308(a) of the present Vehicle Code, this duty to provide or exhibit is additionally preconditioned upon the police officer's reasonable belief that some violation of the Vehicle Code has been committed. Therefore, a probable cause standard must be met before a vehicle operator may be stopped in order to have his driver's license or vehicle registration checked. This standard would apply even in those situations where license and registration road-checks were nonarbitrary and systematic in nature.

Section 6308(b) of the Vehicle Code, which applies in the instant circumstance, authorizes police officers to stop vehicles for the purpose of inspecting those vehicles as to, among other things, their equipment and operation where they "reasonably believe" it to be necessary to enforce the provisions of the act. The languge of this subsection does not set forth a probable cause standard for those items of inspection enumerated therein. Rather, in effect, it gives the police some leeway in enforcing certain provisions of the code. In this way the legislature has statutorily permitted the police

in this circumstance to establish "inspection stops," as opposed to "investigative stops." See United States v. Harris, 404 F. Supp. 1116, 1123, fn. 7 (E.D. Pa. 1975). Of course, Pennsylvania case law continues to prohibit arbitrary stops without probable cause for these purposes: Com. v. Caporiccio, 210 Pa. Superior Ct. 230, 232 A. 2d 42 (1967); Com. v. Harbaugh, 8 D. & C. 3d 624 (1979).

The second issue concerns whether the state police, pursuant to section 4981 of the Vehicle Code, may require more than one weighing without the driver's consent. Defendant seeks an extremely narrow interpretation of this statute, so as to allow only one weighing, using either portable or stationary scales. While the section under consideration is penal and, therefore, subject to strict construction, "[t]his does not mean . . . that it is to be given its narrowest meaning if such is directly contrary to the plain intention of the legislature. (Citations omitted.)" Com. v. Burall, supra, at 529, 22 A. 2d at 622. Requiring that drivers shall submit to a preliminary weighing does not impose an unfair burden, as it provides a workable screening method for offenders which lessens the inconvenience to the ordinary, law-abiding driver. While the statute does not expressly provide for such a preliminary weighing, this procedure promotes the efficient performance of what the legislature intended.

Defendant's argument that the lesser weight be taken is baseless because, pursuant to section 4981(d) of the Vehicle Code, such re-weighing, which is the only other weighing to be considered, must come as a result of a driver's specific request. Nowhere in the record does it appear that defendant made such a request.

As a basis for the final issue, defendant argues that the weighmaster at the time of this episode was not properly certified. Defendant admits that the weighmaster had been trained by the Department of Agriculture, but that his certification had expired and he had been re-certified by the Pennsylvania State Police. Section 4981(a) of the Vehicle Code provides, inter alia, that "[t]he measurement and weighing shall be conducted by qualified personnel who have been trained in the use of weighing and measuring equipment in a training program approved by the Department of Agriculture." The statute says nothing about certification; it only talks about approval. Furthermore, the statute does not even require that the Department of Agriculture actually provide the course. We note that the Department of Agriculture has approved, as of March 14, 1979, the Pennsylvania State Police Course of Instruction in Vehicle Weighing and Measuring: 9 Pa. Bull. 2274 (1979). Under these circumstances, we conclude that the weighmaster was properly qualified for his position at the time of the incident.

All issues having been resolved, we, therefore, make the following

## ORDER

And now, May 7, 1980, the court denies and dismisses defendant's appeal from a summary conviction.