STATE of Iowa, Appellee,

v.

Steven Melvin COOLEY, Appellant.

No. 57302.

Supreme Court of Iowa.

May 21, 1975.

Jonathan C. Wilson, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. County Atty., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

RAWLINGS, Justice.

Defendant, Steven Melvin Cooley, appeals from judgment on jury verdict finding him guilty of carrying a concealed weapon in violation of The Code 1971, Section 695.2. We reverse.

October 8, 1971, at about 9:00 p. m., two Des Moines policemen, on special assignment to investigate armed robberies and house prowling in the Model Cities area, observed a 1961 Chevrolet parked at the corner of Thirteenth Street and Forest Avenue. Occupants of the vehicle were defendant, Vicky Lyon and her two year old child. At approximately 9:30, defendant emerged from the passenger side of the Chevrolet and entered the Salt and Pepper Lounge, a tavern located in the 1300 block on Forest Avenue. Defendant walked back and forth between the tavern and automobile two or three times, on each occasion remaining in the lounge for several minutes. Mrs. Lyon, driver of the Chevrolet (owned by her husband), waited in the car with her child. Upon defendant's last emergence from the tavern he engaged in a brief conversation with an individual, later identified as Hall. Defendant thereafter returned to the car which then proceeded east on Forest Avenue.

Several blocks away the officers halted the Chevrolet. Mrs. Lyon was asked for and produced her driver's license after accompanying one of the officers to the nearby patrol car. Meanwhile, the other policeman went to the passenger side of the Chevrolet and asked defendant to step out. When defendant complied the officer noticed the handle of a revolver protruding from beneath the front seat. Defendant was thereupon arrested.

Subsequently, defense counsel filed a pretrial motion to suppress, as illegally obtained evidence, the seized revolver. A hearing

followed. In denying said motion trial court foundationally held reasonably suspicious circumstances justified the car-stop.

During trial, in absence of the jury, defendant renewed his previously voiced objection to admission in evidence of the aforesaid revolver. That objection was overruled, this time on the premise Code § 321.492, quoted *infra*, authorized a stop of the vehicle.

Upon the basis of each holding, *supra*, trial court concluded the officer was in a place where he had a right to be when the gun was observed and the seized weapon was therefore admissible in evidence.

Defendant's directed verdict motions, made at close of the State's case and again after introduction of all evidence, were overruled.

During deliberations the jury requested a rereading of testimony given by several State's witnesses. Trial court denied same and the above noted guilty verdict was thereafter returned.

Defendant subsequently moved for a new trial which was denied.

In support of a reversal defendant asserts trial court erred in (1) denying his suppression motion and overruling the in-course-of-trial objection regarding introduction in evidence of the seized revolver, (2) refusing a jury request for the rereading of testimony given by several State's witnesses, (3) failing to instruct the jury on the meaning of the word "carried" as used in the accusatory charge, (4) overruling his directed verdict motions based on insufficiency of evidence, and (5) denying his new trial motion.

█ I. It is prefatorily understood, contraband in plain view or readily observable by an officer while in a place where he or she has a lawful right to be is subject to seizure, absent a warrant, and admissible in evidence. See State v. Merchandise Seized, 225 N.W.2d 921, 925 (Iowa 1975).

Defendant contends, however, stopping of the Lyon vehicle was constitutionally impermissible, therefore the officers' presence at the stopped car was unlawful. In this regard, he reasons the initial stop cannot be justified by (1) provisions of Code § 321.492, or (2) existent circumstances reasonably suggestive of criminal activity. Upon these premises defendant maintains the weapon was unlawfully obtained and therefore erroneously admitted in evidence. The foregoing contentions will be entertained in the order presented.

Code § 321.492, states, in relevant part: "Any peace officer is authorized to stop any vehicle to require exhibition of the driver's operator or chauffeur license * * *."

Defendant initially contends that since the Lyon vehicle was not stopped for the purpose of examining the operator's permit but rather to satisfy the officers' mere suspicions or curiosity, the viewing officer was not in a place where he had a lawful right to be. He alternatively posits that in event § 321.492 authorizes vehicle stops absent the purpose to inspect the operator's permit, then this statute is unconstitutional. The State oppositively argues § 321.492 gives officers an absolute right to stop a vehicle which in turn justifies his presence. By virtue of our holding, *infra*, we do not reach the above stated alternative issue.

As best determinable this court has never before been called upon to resolve the aforesaid initial contention. We shall therefore look to other relevant decisions and authorities for guidance.

First called into play is United States v. Cupps, 503 F.2d 277 (6th Cir. 1974). There the defendant had been stopped by officers at which time they discovered and took possession of a pistol lying on the front seat of the halted vehicle. Defendant was thereafter found guilty of possessing a gun after having been convicted of a felony. On appeal the conviction was reversed. Although the seizure was invalidated on other grounds the court aptly stated, 503 F.2d at 282:

> "[W]e have assumed, *arguendo*, that the state police have, as appellee con-

tends, under their authority to inspect licenses, an absolute right to stop any driver. Although it is unnecessary to decide the question in this appeal, we observe that the officers' claim that this was their reason for stopping appellant is refuted by other evidence. They testified that they followed and stopped Cupps [defendant] because they wanted to know his business and the identity of his passengers, and not because they wanted to inspect his license. * * * *Police may not lawfully use their general inspection powers as a pretext for stopping motorists for the purpose of inquiring about their business on the public highways. The pretextuous nature of the stop in this case is demonstrated by the fact that Cupps' driving to the police barracks was an entirely lawful act. * * * * Jarvis and Combs [officers] acted beyond their authority when they ordered Cupps out of the automobile, and, therefore, the plain view doctrine never became operative. Unless an officer has a right to be where he is, 'plain view alone is never enough to justify the warrantless seizure of evidence.'* " (emphasis supplied).

And in People v. Harr, 93 Ill.App.2d 146, 235 N.E.2d 1, 2 (1968), is this pertinent observation:

"[T]he State argues that there was no illegal arrest or search in that the officer was empowered to stop a motor vehicle and ask the driver to produce his license under the provisions of Chapter 95½, Sec. 6–118 of the Illinois Revised Statutes [license and permits to be carried and exhibited on demand] * * *.

" * * * *

"The facts in this case indicate that the police officer here did not stop the defendant's car for the purpose of enforcing this statute. He stopped it, on the admitted facts, for the purpose of finding out who the defendant was, where he had been and where he was going. *The statute cannot, in any event, be made applicable as authority to inspect the license as a mere subterfuge to obtain information

or evidence not related to the licensing requirement."* (emphasis supplied).

Then in Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So.2d 512, 515 (1963), the court aptly declared:

"*[W]hen the officer's primary purpose in stopping the motorist is not to inspect his license, but to examine the contents of the vehicle, the detention is not in good faith for examination of the driver's license, but a mere subterfuge or excuse for a failure to procure a search warrant. If evidence is discovered under such circumstances, it is illegally obtained.*

"*On the other hand, if the evidence is openly visible to the officer's eyes at the time he is examining the operator's license, where the vehicle was stopped in good faith for that purpose, the officer is not deprived of his power to make an arrest for a misdemeanor or other offense committed in his presence.*" (emphasis supplied).

Accord, Lipton v. United States, 348 F.2d 591, 593–594 (9th Cir. 1965); People v. Francis, 4 Ill.App.3d 65, 280 N.E.2d 49, 51 (1972); Coston v. State, 252 Miss. 257, 172 So.2d 764, 765 (1965); State v. Williams, 237 S.C. 252, 116 S.E.2d 858, 860 (1960); Reels v. State, 210 Tenn. 92, 355 S.W.2d 97 (1962); Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633, 635–636 (1947); Smith v. State, 182 Tenn. 158, 184 S.W.2d 390 (1945); Cox v. State, 181 Tenn. 344, 181 S.W.2d 338 (1944). See also 46 Iowa L.Rev. 802, 808 (1961); 60 Va.L.Rev. 666, 676–678 (1974).

■ We subscribe to and hereby adopt the views expressed in the foregoing cases.

With regard to the reasons advanced by the officers for stopping the instantly involved (Lyon) car, the suppression hearing record reveals this pertinent colloquy:

"Q. Mr. Wells [officer], I understand your testimony to be that the reason that you initially stopped this car was because you considered the actions of the Defendant which you alleged took place in going

to and from the tavern to be suspicious, is that correct? A. That, plus the other factors. With the situation, yes, sir.

"Q. The other factors to which you refer would be that this is a high crime rate and predominantly negro area of town? A. Yes. Two other reasons, yes."

■ It thus inferentially follows, the Lyon car-stop was not effected for the motivative purpose of inspecting the operator's permit. Therefore the stopping officers cannot, on this basis, be deemed to have been in a place where they had a lawful right to be. Consequently, seizure of the gun observed in the stopped vehicle cannot attendantly pass constitutional muster. On this basis the seized weapon was not admissible in evidence. Trial court erred in holding otherwise.

II. The question next posed is whether the instant gun seizure can be justified by reason of a lawful investigatory stop of the Lyon car.

In State v. Shea, 218 N.W.2d 610, 613 (Iowa 1974) we were called upon to determine whether "probable cause" existed for a car-stop. There a stationed policeman had been advised by an informant to the effect the lone occupant of a nearby parked automobile (Hines) was "dealing in dope". Subsequent events tended to confirm this tip. Thereafter Hines, accompanied by a person (Shea) known to the police as a drug seller, hurriedly drove away. The Hines' vehicle was later stopped by policemen in a squad car pursuant to an intercom directive given by the aforesaid stationed officer. This court upheld an attendant seizure of readily observable controlled substances in the stopped car. Significantly, the case was tried and presented for appellate review on a "probable cause" basis and accordingly considered.

In the case at hand, however, neither defendant nor State argues presence or absence of "probable cause" to justify a stop of the car and subsequent gun seizure. Rather, both parties hereto address themselves to this issue: Did the officers have "reasonable grounds" for an investigatory stop of the vehicle? It is thereupon argued that if no such reasonable grounds existed then the police were not in a place where they had a right to be and the gun, though readily observable, was unconstitutionally obtained.

The leading case on investigative stops is Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There the Court, 392 U.S. at 22, 88 S.Ct. at 1880, recognized authority on the part of officers to stop an individual, absent probable cause, for the purpose of investigating unusual behavior which reasonably causes them to believe criminal activity is afoot.

Illustratively, the Court stated in Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972):

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' (Citation omitted). The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape."

See also United States v. Hernandez, 486 F.2d 614, 616 (7th Cir. 1973), cert. denied 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974).

■ It would appear the instantly involved Lyon vehicle-stop constituted a "seizure" of the person within the context of the Fourth Amendment. See Carpenter v. Sigler, 419 F.2d 169, 171 (8th Cir. 1969); United States v. Carter, 369 F.Supp. 26, 29 (E.D.Mo.1974); Loyd v. Douglas, 313 F.Supp. 1364, 1367–1368 (S.D.Iowa 1970). In any event we must objectively determine whether stopping of said vehicle, on less than probable cause, was reasonable under the circumstances. See generally Fields v.

Swenson, 459 F.2d 1064, 1067 (8th Cir. 1972); United States v. Nicholas, 448 F.2d 622, 624 (8th Cir. 1971); Carpenter v. Sigler, *supra.*

If the officers were reasonably justified in effecting a stop of the vehicle then they were in a place they had a right to be and contraband readily observable in the car could be lawfully seized and admitted in evidence. See Williams v. State, Ind., 307 N.E.2d 457 (1974); Collins v. Commonwealth, 396 S.W.2d 318, 319 (Ky.1965); Taylor v. Commonwealth, 394 S.W.2d 895, 896 (Ky.1965); People v. Whalen, 390 Mich. 672, 213 N.W.2d 116, 122 (1973). See generally State v. Merchandise Seized, *supra.*

Focusing now upon the matter of reasonableness, the Court in *Terry* indicated the question is a dual one: (A) whether articulated facts warrant intrusion on an individual's Fourth Amendment rights and (B) whether the scope of intrusion is reasonably related to circumstances which justified interference in the first place. See Carpenter v. Sigler, *supra.* See also United States v. Harflinger, 436 F.2d 928, 932–933 (8th Cir. 1970), cert. denied 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). But we need not concern ourselves with "scope of intrusion" since defendant contests the intrusion alone. In other words, he maintains initial stopping of the Lyon car was unreasonable. On this subject the *Terry* Court said, 392 U.S. at 21–22, 88 S.Ct. at 1880:

> "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? (Authorities cited). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches * * *." (Emphasis supplied).

■ Briefly stated, an investigatory stop of a motor vehicle is constitutionally permissible only if the stopping officer has specific and articulable cause to reasonably believe criminal activity is afoot. By the same token, circumstances evoking mere suspicion or curiosity will not suffice.

Here the State seeks to uphold the car-stop on this factual background:

(A) the vehicle was seen parked in an area having a high crime rate;

(B) the car carried out-of-county license plates;

(C) defendant made several trips to and from a nearby tavern;

(D) defendant engaged in conversation with an individual suspected by the police to be a drug dealer and robber;

(E) occupants of the car, including defendant, were white in a predominantly black area;

(F) a woman was driving the car and defendant was a passenger.

In United States v. Harflinger, *supra*, this factual situation was held to justify an investigatory car-stop:

(A) the automobile was licensed to a St. Louis owner but seen in a small town approximately four and a half hours' drive from St. Louis;

(B) the car had been observed at 4:30 in the morning, parked crosswise on a highway with its lights on a barn owned by a liquid petroleum dealer;

(C) later in the morning the vehicle was seen about one-half mile from the dealer's petroleum storage tank;

(D) tracks were found around the dealer's petroleum storage tank, located on private property, indicating a vehicle had driven around the tank and someone wearing boots with distinctive lugged soles had walked around the container and returned to the car;

(E) one of the automobile occupants had been observed wearing boots with lugged soles identical to those which made the tracks.

For like holdings based on similar circumstances, see Carpenter v. Sigler and Fields v. Swenson, both *supra;* Orricer v. Erickson, 471 F.2d 1204, 1207 (8th Cir. 1973); United States v. Owens, 472 F.2d 780, 782 (8th Cir. 1973), cert. denied 412 U.S. 951, 93 S.Ct. 3019, 37 L.Ed.2d 1004 (1973).

On the other hand, in United States v. Nicholas, 448 F.2d at 624–625, a case factually analogous to that here presented, the Court held a car-stop was unreasonable where:

(A) the police were not investigating any particular crime;

(B) they had no information respecting the automobile or its occupants;

(C) there was no showing the police had been informed of suspicious activities in the vicinity at time of defendant's arrest, aside from their general knowledge the area was known to be a narcotics traffic center;

(D) the police observed the vehicle for a short period during which time defendant's companion sat quietly in the car until defendant came out of the pool hall and entered the vehicle;

(E) the time was 11:15 p. m. and other individuals were then abroad on the streets;

(F) defendant and his companion were black men in a predominantly black area;

(G) the car bore out-of-county license plates.

■ Viewed against an objective backdrop the instantly involved factual situation does not support a finding that the stopping of Mrs. Lyon's car was for a reasonably adequate investigatory purpose. More precisely, (1) no specific crime was being investigated, (2) the police had no incriminating information concerning the car or its occupants, (3) apparently neither officer had ever previously seen those occupants (4) 9:30 p. m. is a reasonable hour to be traveling city streets, (5) out-of-county license plates are frequently seen in the Des Moines area, (6) although one of the policemen testified, Hall, the man with whom defendant was seen conversing, had been suspected of illegal narcotic sales and robberies, neither officer could say Hall had ever been convicted of any such offense, (7) both officers conceded the conduct of defendant and other car occupants was susceptible to legitimate explanation.

This is a far cry from specific and articulable facts which, with rational inferences, can be objectively said to have reasonably warranted the involved car-stoppage and attendant intrusion upon defendant's constitutionally guaranteed rights. In fact the officers acted improperly upon nothing more than speculation, conjecture and surmise.

We now hold the State failed to prove the officers (1) had reasonable cause to stop the Lyon car and (2) were in a place where they had a right to be. See State v. King, 191 N.W.2d 650, 654 (Iowa 1971). Therefore, the plan view or readily observable doctrine never became operative. Consequently, trial court erred in holding the gun admissible in evidence on the basis of a lawful investigatory stop. Any other holding would open the door to indiscriminate and intolerable stopping of vehicles on our public highways upon nothing more than intuition, surmise and conjecture.

■ III. In light of the above holdings admission in evidence of the gun taken from the Lyon car constitutes reversible error. See United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974); State v. Smith, 178 N.W.2d 329, 332 (Iowa 1970).

■ IV. Finally entertained is defendant's complaint regarding absence of an instructional definition of the word "carried" contained in the weapon possession charge here made. The record disclos-

es no request for such clarification or amplification of instructions given was voiced prior to submission thereof to the jury. It thus follows the asserted error, if any, was not preserved for appellate review. See State v. Blyth, 226 N.W.2d 250, 273 (Iowa 1975); State v. Hall, 214 N.W.2d 205, 210 (Iowa 1974); State v. Hraha, 193 N.W.2d 484, 486 (Iowa 1972).

V. Under the circumstances other errors assigned are not considered.

Reversed and remanded for a new trial.