**STATE of Iowa, Appellee,**

v.

**Michael William REESE, Appellant.**

**No. 59720.**

Supreme Court of Iowa.

Nov. 23, 1977.

John C. Wellman, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of carrying a concealed weapon in violation of section 695.2, The Code, 1975. He was tried before a jury, convicted, and sentenced to a term of not to exceed five years in the

penitentiary. He appeals, asserting trial court erred in overruling a pretrial motion to suppress testimony concerning a pistol obtained by law enforcement officers when they stopped a car in which he was a passenger and conducted an investigatory search of the vehicle without reasonable grounds for conducting the search. We are in agreement with defendant's position, and reverse.

On March 19, 1976, at about 2 o'clock, a.m. Polk County Deputy Sheriff Parkins, while on patrol, overheard radio transmissions between police officers of the city of Ankeny and Polk County Detective Harold Strausburg. The radio communications concerned an automobile which the Ankeny police had under observation in their town and while Deputy Parkins did not hear the substance of the radio communications, he was able to secure a description of the vehicle which the Ankeny police were watching, together with its license number. Parkins also heard Detective Strausburg advise the Ankeny police that he would be watching for the vehicle.

Detective Strausburg testified that he had listened to communications between the Ankeny police officers and had learned from the same that the police were watching a certain automobile which was reported as being driven in a "suspicious manner" in the town of Ankeny. He also learned from the communications the auto had been in Ankeny and was headed from there in a southerly direction. Strausburg later learned through the radio communications that the registered owner of the automobile was one Claude Bumpus, and Strausburg remembered or was under the impression that Bumpus had a prior arrest and felony conviction record, although at the suppression hearing he was unable to give any details on the arrest record or the exact crime which Bumpus was suspected of having committed.

Deputy Parkins saw the automobile in question at the gas station south of Ankeny and near Interstate 80, but saw nothing unusual about the car or its occupants who were apparently purchasing gasoline. Solely on the basis of the communications he had overheard between the Ankeny police and Detective Strausburg, he stopped the vehicle as it left the gas station. Detective Strausburg arrived on the scene just a short time later in an unmarked vehicle. Both officers approached the car and obtained the names of the passengers, one of whom was the defendant. After running an identity check on the passengers, it was discovered that one of them was wanted in Illinois for armed robbery, and on the discovery of such information the officers asked all of the passengers to alight from the car. While the passengers were in the process of complying with such direction, the officers noticed that defendant was attempting to hide a .44 caliber pistol under the seat of the auto, and Detective Strausburg reached into the auto, removed the weapon from the car and placed defendant under arrest.

At the pretrial suppression hearing, defendant contended that the gun was obtained consequent to an investigatory search and was admissible at trial only if the circumstances under which it was seized made the plain view doctrine applicable. Defendant argued the plain view doctrine was inapplicable because there were no facts before the trial court which could possibly justify a conclusion that the officers who saw the defendant attempting to hide the weapon had a legal right to be at the scene by reason of a proper investigatory stop of the vehicle in which defendant was riding. Trial court concluded the investigatory stop was proper and overruled defendant's motion to suppress the evidence concerning the seizure of the gun. During the hearing on the motion to suppress, trial court interrogated the witnesses and established in the record that Ankeny is basically a residential town which had had an increasing crime rate over the past five years. It was also established by interrogation of the witnesses that the term "suspicious" employed in describing the manner in which the vehicle was being operated in Ankeny was used by the officers to convey the information that the vehicle was being driven around the town of Ankeny in an aimless fashion and without apparent destination.

After the overruling of the pretrial suppression hearing, and at trial, defendant objected to the introduction of the evidence concerning the seizure of the gun at several stages, including his motion for a directed verdict and a post-verdict motion for new trial. All were overruled and this appeal ensued.

I. The sole issue stated by defendant for review is whether trial court erred when it overruled defendant's motion to suppress evidence of the seizure of the gun on the grounds that the investigatory stop of the vehicle and the resulting seizure of the gun were constitutionally impermissible.

II. The defendant and the State seem to be in agreement that if the seizure of the gun was a product of a search which met the "plain view" exception to the requirement of a search conducted pursuant to a valid search warrant the search and seizure could not be attacked on constitutional grounds. However, there is a factual dispute as to whether the law enforcement officers had a legal right to be in the place where they could observe the weapon. Without unduly extending this opinion we note discussions of the "plain view" doctrine are found in *Coolidge v. New Hampshire,* 403 U.S. 443, 464–473, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564; *State v. Davis,* 228 N.W.2d 67, 69–72 (Iowa 1975); *State v. Jackson,* 210 N.W.2d 537, 540–541 (Iowa 1973).

■ The State contends the officers were in the process of conducting a lawful investigatory stop of the automobile and consequently their view of the weapon was lawful. Defendant contends the officers did not have the legal right to view the weapon since the investigatory stop was unlawful. We have articulated the basis on which lawful investigatory stops of vehicles may be made. In order for law enforcement officers to conduct a lawful investigatory stop they must reasonably believe from the circumstances criminal activity may have occurred, but they do not need to know the requisite facts to meet the requirements of probable cause. *State v. Dixon,* 241 N.W.2d 21, 23 (Iowa 1976);

*State v. Donnell,* 239 N.W.2d 575, 577 (Iowa 1976); *State v. Cooley,* 229 N.W.2d 755, 759 (Iowa 1975). In order for the State to establish the officers had reasonable grounds to conduct an investigatory stop of a motor vehicle when the grounds are questioned, the State must show the officers possessed objective facts that indicate " * * * the stopping officer has specific and articulable cause to reasonably believe criminal activity is afoot. Circumstances evoking mere suspicion or curiosity will not suffice." *State v. Dixon,* 241 N.W.2d at 23.

■ The State asserts in this case the record reveals facts that establish the law enforcement officers had a specific and articulable cause to make the investigatory stop of the vehicle. The record tends to establish the stopping officers had knowledge of the following facts:

(1) Suspicious activity was occurring between 2:00 and 2:30 a.m.

(2) The town of Ankeny is a residential area and had been subjected to an increasing number of burglaries and thefts over the past five years.

(3) The stopping officers had information obtained via the radio transmissions from the Ankeny police that the car was being operated in a suspicious manner which the officers interpreted to mean the car was being driven around the town of Ankeny with no apparent purpose.

(4) One of the officers who made the investigatory stop recalled the name of the registered owner as being that of a convicted felon.

(5) There were five people in the automobile at the time of the stop.

(6) The auto bore Polk County license plates.

The officers were not possessed of information which tended to connect the automobile with any crime, nor were they informed that it had been in an area where crime had been committed. There was no evidence in the record which tended to show underlying facts to support the Ankeny police officers' characterizing the car as "sus-

picious", within the context in which the term "suspicious" was used by the Ankeny and Polk County officers.

We are forced to the conclusion the officers did not have specific and articulable cause to conduct an investigatory stop. The facts of this case are unlike the facts in *Dixon,* where we found the investigatory stop constitutionally valid since the officer making the stop was possessed of facts linking the vehicle to a crime committed nearby. Nor are the facts in this case parallel to those in *Donnell,* in which case the court held the investigatory stop constitutional since the officers stopped the car on the grounds that the van was seen in a small town, that the officer had not recognized the occupants, that the town had been subjected to hundreds of residential burglaries over the preceding year, that the vehicle was being operated at 2 o'clock, a.m., and being driven slowly through a neighborhood where many of the residences were vacant during the winter months, and that the vehicle was capable of transporting stolen household goods.

We are unable to give weight to the fact that one of the officers participating in the stop in this case recalled the name of the registered owner of the automobile as being the name of a convicted felon since at trial the officer was unable to give detail as to the owner's record or for what crime he was convicted. Neither does the fact there had been an increase in home breakins over the past five years in the town of Ankeny support the investigatory stop.

On the foregoing review of the facts surrounding investigatory stop of the vehicle in this case, we are constrained to hold the record fails to establish specific and articulable facts which afford reasonable grounds for the investigatory stop. Since the stop was unlawful, the officers had no right to be in the place where they observed the weapon. As a result the warrantless search fails to come within the requirements of the plain view exception to the warrant requirement for searches, and the search was unlawful. The trial court should have suppressed the evidence concerning the search and erred when it overruled defendant's motion to suppress. See *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 564, 91 S.Ct. 1031, 1034–1035, 28 L.Ed.2d 306; *State v. Colgrove,* 198 Neb. 319, 253 N.W.2d 20 (1977).

Since our holding is that the seizure of the weapon was unlawful and the possession of the weapon constitutes the gravamen of the offense charged, no purpose will be served in remanding this case for further proceedings. This case is, therefore, reversed, but not remanded.

REVERSED, BUT NOT REMANDED.