STATE of Iowa, Appellee,

v.

Howard ASCHENBRENNER, Appellant.

No. 63248.

Supreme Court of Iowa.

March 19, 1980.

Stephen J. Rapp of Gottschalk & Gilliam, Cedar Falls, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and David H. Correll, Black Hawk County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, ALLBEE and McGIVERIN, JJ.

McCORMICK, Justice.

The question here is whether police officers who stopped defendant's pickup truck prior to his arrest for operating a motor vehicle while intoxicated (OMVUI) under § 321.281, The Code, had reasonable cause for stopping the vehicle. Defendant moved to suppress all evidence subsequently obtained, alleging the stop was an unlawful seizure under U.S.Const. amend. IV and Iowa Const. art. I, § 8. After hearing, the trial court overruled the motion to suppress. Defendant was later convicted in a trial to the court on stipulated evidence. In this appeal, he contends the court erred in overruling his motion to suppress.

■ This case is difficult on the facts but not on the law. The governing constitutional principles are well settled. An officer must have reasonable cause to stop a vehicle. *State v. Cooley*, 229 N.W.2d 755, 759 (Iowa 1975). In order to establish reasonable cause when the grounds are challenged, the State must show that the officer had specific and articulable cause to support a reasonable belief that criminal activity may have occurred. *State v. Reese*, 259 N.W.2d 793, 795 (Iowa 1977); *Cooley*, 229 N.W.2d at 760. Officers are bound by their true reason for making the stop. They may not rely on reasons they could have had but did not actually have. *Cooley*, 229 N.W.2d at 757–59; *People v. Bower*, 24 Cal.3d 638, 647, 597 P.2d 115, 120, 156 Cal. Rptr. 856, 861 (1979). If the State fails in its burden, evidence taken as a result of the stop must be suppressed. *Reese*, 259 N.W.2d at 796; *Cooley*, 229 N.W.2d at 761. Because a constitutional challenge is involved, we review the evidence de novo. *Kellogg v. State*, 288 N.W.2d 561 (Iowa 1980).

■ At approximately 1:45 a. m. on November 11, 1978, two part-time officers of the Evansdale police department were parked in a police car in a shopping center parking lot, operating radar on vehicles traveling east and west on adjacent Lafayette Street. Michael Wilson was the driver of the police car, and Mark Isley, a new officer, was a passenger in it. They observed a green and white pickup truck enter the street from the direction of a tavern across the street and proceed east.

The pickup truck was being driven by defendant Howard Aschenbrenner. He was accompanied by Joanne Wilson, former wife of Officer Wilson. At the time of the inci-

dent involved here, Michael did not know the dissolution decree had been obtained.

Three witnesses testified in the suppression hearing, Officers Wilson and Isley for the State and Joanne Wilson for defendant. The officers on one side and Joanne on the other gave opposing versions of the events which preceded the stop of defendant's vehicle. The State's version tends to show two relatively inexperienced part-time officers attempting in good faith to do their duty and adequately doing so; Joanne's version tends to show a jealous man using the color of his office to harass a woman to whom he thought he was still married who was out drinking with another man.

We first recite the police version. Michael and Isley saw the rear of the pickup run over a curb on the access road it used while entering Lafayette Street. Michael drove the police car onto the street to follow the pickup from four or five car lengths to the rear. He did not recognize the occupants, although he saw they were a man and woman sitting close together. Isley did not know either of them. He asked Michael if he knew who was in the pickup, and Michael said he did not. The pickup made a quick, late stop at a four-way stop sign, then continued east. It was weaving back and forth in its lane of travel, and at one or two points the right wheels went onto the shoulder. When it reached an intersection with Lawrence approximately two and one-half blocks from the point it entered Lafayette, it turned south and stopped on the right-hand side of the street after traveling fifty or sixty feet. Believing the pickup occupants had arrived at their destination, the officers drove past it, only to discover it was following them about half a car length behind. Approximately two and one-half blocks further, Michael turned right at a stop sign to head west on Central. At that point the officers saw defendant make a U-turn in the intersection of Lawrence and Central, hitting the curb in doing so, and head back to the north on Lawrence. Isley remarked to Michael that the driver was not doing a very good job of driving. At that point Michael decided to stop the pickup to talk with the driver. He turned around, caught up with it and pulled it over.

Michael went up to the driver's side of the pickup and asked to see defendant's driver's license. He smelled the odor of alcoholic beverage on defendant's breath. Defendant asked Michael why he had been stopped, and Michael said it was for an improper U-turn. When he recognized his former wife was the passenger, Michael told defendant to stay in the vehicle and asked Joanne to come back to the police car to talk to him. In the meantime, Isley was standing behind the pickup in accordance with standard procedure.

Back at the police car, Michael and Joanne got into an argument and scuffle. Joanne was intoxicated and eventually ended up in handcuffs. Other officers were called to assist. A full-time officer named Millard was called to the scene to put defendant through field sobriety tests and the implied consent procedure. This was necessary because Michael and Isley did not qualify as peace officers authorized to administer the implied consent procedure. Millard filled out citations against defendant for improper U-turn and OMVUI. Joanne was charged with intoxication, but the citation was later voided. The improper U-turn charge was also dismissed because the Evansdale U-turn ordinance was applicable only to intersections where signs prohibiting U-turns were posted.

We next summarize Joanne Wilson's version of these events. She and defendant had been at the Evansdale Tap. They left there in defendant's pickup truck at approximately 2:00 a. m. to go to defendant's brothers's house. Defendant did not drive over any curbs or drive erratically at any time. Defendant told her the police car was following them as they traveled east on Lafayette Street. They did not stop after turning onto Lawrence, but the police car passed them going rather fast. When the pickup got to the intersection at Central, defendant made a U-turn to go back north on Lawrence toward his brother's house which was on that side of the street.

Joanne did not know Michael was in the police car until the officers stopped the pickup and he came up to the driver's side, told defendant he had made an improper U-turn and asked to see his license. When Michael asked her to get in the squad car, she resisted, became hysterical and was handcuffed. Michael cited her for intoxication, tore up the citation later at the police station and let her go.

This conflict in the evidence is troublesome. Even under the State's version of events, Michael's conduct was far from commendable. Yet, defendant acknowledges that if the officers are believed, they had reasonable cause to stop his vehicle. *See Saunders v. Commission of Public Safety*, 226 N.W.2d 19 (Iowa 1975); *Shellady v. Sellers*, 208 N.W.2d 12 (Iowa 1973). It is true they did not in fact articulate at the time of the stop the basis for it which they claimed subsequently in the suppression hearing. However, the reasonable cause test does not depend on what cause they articulated; it depends on what the basis of the stop actually was. The fact they did not tell defendant he was being investigated because of his erratic driving is nevertheless relevant in assessing the credibility of their subsequent claim. Similarly, Michael's credibility is weakened by the fact the reason which he did articulate had no basis in law because the ordinance did not prohibit a U-turn at the intersection involved. It strains credulity to suggest Michael and Millard did not know the ordinance was inapplicable.

The State's version of events is supported by the fact Isley corroborated Michael's testimony and by the fact the two part-time officers, who were unqualified to conduct the implied consent procedure, summoned a qualified officer to conduct the OMVUI investigation. This may explain why they did not inform defendant of that possible charge or conduct the field sobriety tests on their own. This also tends to show the OMVUI charge was not brought merely to mend their hold.

Joanne's version of events is affected by strong evidence of her own intoxication, her admitted subsequent hysteria, and the involvement of her own emotions in the events. Her acknowledgment that she did not know Michael was in the police car until after he stopped defendant's pickup truck lends some support to his claim he did not previously recognize her. If he was close enough to recognize her, she should have been close enough to recognize him.

On balance, we conclude that the State's version of events is more credible. We hold that the State proved the officers had specific and articulable cause to support a reasonable belief criminal activity may have occurred at the time they stopped defendant's vehicle. The trial court was right in overruling the motion to suppress, and the conviction must stand.

AFFIRMED.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

In my de novo review of the conflicting versions of the facts I reached the opposite conclusion. I subscribe entirely to the majority's description of those versions, of the matters to be reviewed, and to the statement of controlling legal principles. But the record persuades me that the defendant's description of what happened is closer to the truth. I conclude that the officers stopped the vehicle, not because either believed that criminal activity occurred, but rather because one of them was acting as a jealous husband. I would reverse.