STATE of Iowa, Appellee,

v.

Jimmy Lynn HILLESHIEM, Appellant.

STATE of Iowa, Appellee,

v.

Jeffrey Scott CARLSON, Appellant.

STATE of Iowa, Appellee,

v.

Michael Dan KEMMERER, Appellant.

Nos. 63529, 63534 and 63538.

Supreme Court of Iowa.

April 23, 1980.

R. L. Van Veldhuizen of O'Brien Law Firm, P. C., Oelwein, for appellant Hilleshiem.

Larry F. Woods, Oelwein, for appellant Carlson.

John W. Hofmeyer III of Hofmeyer & Anthony, Oelwein, for appellant Kemmerer.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and J. G. Johnson, Asst. Fayette County Atty., for appellee.

REYNOLDSON, Chief Justice.

In each of these three cases the defendant filed application for discretionary review after trial court overruled his motion to suppress evidence obtained when the police stopped the auto he occupied. Because each arrest arose out of the same or similar circumstances, we consolidated the appeals for submission and now reverse the three rulings in this opinion.

Suppression hearing evidence disclosed the police action was triggered by a wave of vandalism in the Oelwein city park which had caused damages totaling $7000 to $8000.

At about 8 p. m. November 20, 1978, police officers Ringham and Barker devised a plan to stop all the vehicles in the park after dark. Ringham later testified this was "to identify the driver, so that if there was some vandalism that had occurred that evening, we would at least have an idea of someone to question, to see if they had seen anything." There had been no vandalism for several days. The action was initiated without direction from the chief of police or higher authority.

Three cars were stopped at about 8 p. m. on November 20. The second car was driven by James Weishaar, who later testified (without contradiction) that the officers said "if we came through again that the cars probably would be searched."

The third car was driven by defendant Jeffrey Carlson. His frontseat passenger was the defendant Michael Kemmerer. Officer Barker, on the driver's side of the car, smelled a "strong odor of burnt marijuana" and observed a pipe, of a type commonly used to smoke marijuana, on the console between the front seats. Officer Ringham, apparently checking out Kemmerer, signaled the latter to roll down the passenger side window. Ringham also smelled marijuana. Carlson, Kemmerer, and a backseat passenger were arrested and the still-warm pipe was seized. The three were taken to the police station. Although he was given the *Miranda* warning, Carlson wrote out a statement for the police shortly after 10 p. m. in which he admitted the three had been smoking marijuana.

By the time the booking procedures were completed, the 10:30 p. m. park closing time, as well as the 11 p. m. shift termination time, had passed. No further vehicle stops were attempted. Carlson and Kemmerer were charged with possession of a controlled substance in violation of section 204.401(3), The Code. Carlson moved to suppress the testimony of the police relating to their observations after the car was stopped, together with his later written statement. Kemmerer filed a motion to suppress all evidence obtained from the car, "including but not limited to a pipe and its contents."

On the next night, November 21, officers Barker and Shirkey continued the vehicle stops in the park, this time pursuant to an assistant chief's "directive." The record does not disclose whether this directive was oral or written, or whether it contained any restraints on the officers' discretion. Officer Barker testified, "This was just something that we were doing when we had the time to do it." Their intention was to stop "every vehicle that [it] was possible for us to stop," but when a car was stopped it was impossible to stop one going in the opposite direction.

These officers commenced stopping cars at 8:30 p. m. The third car stopped belonged to defendant Hilleshiem. When officer Barker asked Hilleshiem to produce his driver's license he observed a can of beer in his lap and minors in the car, one of whom also had beer. On the ground on the passenger side of the car he found a plastic vial containing marijuana cigarettes which had not been there when the car was stopped. The occupants of the car were removed and handcuffed. A search of the car produced partially burned cigarettes, rolled marijuana cigarettes and more beer, both opened and unopened.

Because of the paper work involved with these arrests, no further vehicle stops were conducted on the night of November 21.

Hilleshiem was also charged with possession of a controlled substance in violation of section 204.401(3), The Code. He moved to suppress all evidence relating to marijuana obtained as a result of the car stop incident as an unconstitutional search and seizure.

Evidence on the suppression hearings established that when the Oelwein officers stopped these vehicles they had no recent information relating to any vandalism or criminal activity in the park, or that these vehicles were involved in criminal activity. There were no violations of any motor vehicle laws. There was no indication the stops were related to driver's license or auto registration inspections, and one officer directly stated this was not the purpose of their activity.

The suppression motions were overruled. Trial court relied on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Both in district court and here the three defendants have raised the basic question whether these vehicle stops were constitutionally permissible under the fourth amendment to the United States Constitution and under the Iowa Constitution, art. I, § 8. If the stop was unlawful the evidence should have been suppressed. *United States v. Montgomery*, 561 F.2d 875, 878 (D.C. Cir. 1977); *United States v. Nicholas*, 448 F.2d 622, 623 (8th Cir. 1971); *State v. Reese*, 259 N.W.2d 793, 796 (Iowa 1977); *State v. Swartz*, 244 N.W.2d 553, 555 (Iowa 1976).

I. *Scope of review.*

 Confronted with alleged constitutional violations, we resolve the issue by making our own independent evaluation of the totality of the circumstances. *State v. Iowa District Court*, 247 N.W.2d 241, 245 (Iowa 1976); *State v. Farrell*, 242 N.W.2d 327, 329 (Iowa 1976). Our review is de novo. *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980); *State v. Post*, 286 N.W.2d 195, 199 (Iowa 1979). The burden is on the State to show this evidence was obtained lawfully. *See State v. Shea*, 218 N.W.2d 610, 613 (Iowa 1974).

II. *Constitutionality of the vehicle stops.*

The law which provides the backdrop for considering the issue before us is well established. The essential purpose of the fourth amendment search and seizure proscriptions is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement officials, in order to safeguard the privacy and security of individuals against arbitrary invasions. *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357, 362 (1979); *Delaware v. Prouse*, 440 U.S. at 653–54, 99 S.Ct. at 1396, 59 L.Ed.2d at 667. The first overview courts employ to determine whether a seizure is unreasonable is whether the thing done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. *State v. Davis*, 228 N.W.2d 67, 70 (Iowa 1975).

The United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–79, 20 L.Ed.2d 889, 903–04 (1968), recognized that when a police officer accosts a pedestrian and restrains his or her liberty to walk away, the officer has "seized" that person and the fourth and fourteenth amendments are implicated. In justifying the restraint the officer must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. In the alternative, "the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." *Brown*, 443 U.S. at 51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362. *Accord, United States v. Palmer*, 603 F.2d 1286, 1289 (8th Cir. 1979).

The same "seizure" analysis was adopted in examining issues arising when vehicle occupants were stopped and detained. *See Prouse*, 440 U.S. at 662, 99 S.Ct. at 1400, 59

L.Ed.2d at 673; *United States v. Martinez-Fuerte,* 428 U.S. 543, 554–59, 96 S.Ct. 3074, 3081–84, 49 L.Ed.2d 1116, 1126–29 (1976); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607, 614–15 (1975); *State v. Reese,* 259 N.W.2d at 795; *State v. Donnell,* 239 N.W.2d 575, 577 (Iowa 1976); *State v. Cooley,* 229 N.W.2d 755, 759–60 (Iowa 1975).

In each case, the constitutionality of a particular seizure is judged by balancing the degree of its intrusion on the individual's fourth amendment interests against its promotion of legitimate governmental interests. *Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640, 61 L.Ed.2d at 361–62; *Prouse,* 440 U.S. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667–68; *United States v. Palmer,* 603 F.2d at 1289; *see State v. King,* 191 N.W.2d 650, 654 (Iowa 1971), *cert. denied,* 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972).

In several recent cases involving admissibility of evidence obtained by vehicle stops, the United States Supreme Court has engaged in this balancing analysis. In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Court held a stop and search of a moving vehicle by a roving border patrol, without a warrant, consent, probable cause or even a *Terry*-type "reasonable suspicion" to stop the car, violated the driver's fourth amendment rights. In *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), the same prohibition against a search without probable cause, reasonable and articulable suspicion or consent was imposed, even though the search occurred at a border patrol checkpoint.

These cases were followed in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), in which the border patrol did not claim authority to search the auto, but merely to question the occupants about their citizenship and immigration status. The Court ruled that it was a fourth amendment violation for a roving border patrol randomly to stop motorists for questioning without any reason to suspect that they had violated any law.

A year later in *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the Supreme Court held that vehicle stops for brief questioning of occupants, routinely conducted at "permanent checkpoints," were consistent with the fourth amendment. The San Clemente, California, border patrol checkpoint where the stop occurred was at a state weighing station. There was a permanent building for the border patrol office and the temporary detention facilities. Motorists were warned and then stopped by a series of lighted signals extending a mile from the checkpoint, official vehicles with flashing red lights, and an agent in full-dress uniform. Floodlights were used in night operations. The *Martinez-Fuerte* Court reasoned that although some quantum of individualized suspicion ordinarily is a prerequisite to a constitutional search or seizure, the fourth amendment imposed "no irreducible requirement of such suspicion." 428 U.S. at 561, 96 S.Ct. at 3084, 49 L.Ed.2d at 1130. In the "balancing" equation to determine whether the stop was reasonable, the Court noted that the objective intrusion of the checkpoint stop carried all of the features of the unlawful roving patrol stop, but discerned a difference in the subjective intrusion. "[T]he generating of concern or even fright on the part of lawful travelers . . . is appreciably less in the case of a checkpoint stop." 428 U.S. at 558, 96 S.Ct. at 3083, 49 L.Ed.2d at 1128.

We thus arrive at *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, relied upon by trial court in overruling these suppression motions, and relied upon by these defendants on appeal. In *Prouse* a Delaware municipal patrolman stopped a vehicle, in the absence of suspicious activity, to check the driver's license and the car's registration. He then seized marijuana in plain view on the car floor. The Supreme Court held:

[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation

of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673.

But the State relies on the dicta in the succeeding sentences:

This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.

440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d 673–74 (footnote omitted).

In *Prouse* the Court carefully distinguished between the sporadic and random stops of individual vehicles moving in city traffic "and those stops occasioned by roadblocks where all vehicles are brought to a halt or to a near halt, and all are subjected to a show of the police power of the community." 440 U.S. at 657, 99 S.Ct. at 1398, 59 L.Ed.2d at 670. The Court reasoned in the latter situation the motorist could see the other vehicles being stopped and visible signs of the officer's authority, and would be less likely to be frightened or annoyed by the intrusion. *Id.* Its emphasis was on the requirement for neutral criteria and substantial, objective standards or rules to govern the exercise of a law officer's discretion. 440 U.S. at 661–62, 99 S.Ct. at 1400–01, 59 L.Ed.2d at 672–73.

Several lower court decisions following *Brignoni-Ponce* and *Martinez-Fuerte*, but antedating *Prouse*, stressed the visibility of the checkpoint used in vehicular stops, its fixed location (to limit field officers' discretion and to provide additional notice to motorists) selected by administrative officers with policy-making power, and adequate warning signs to provide early warning of the nature of the impending intrusion. *See United States v. Maxwell*, 565 F.2d 596 (9th Cir. 1977); *United States v. Vasquez-Guerrero*, 554 F.2d 917 (9th Cir.), *cert. denied*, 434 U.S. 865, 98 S.Ct. 200, 54 L.Ed.2d 141 (1977); *United States v. Sandoval-Ruano*, 436 F.Supp. 734 (S.D.Cal.1977). *See also State v. Olgaard*, —— S.D. ——, 248 N.W.2d 392 (1976). All of these decisions made reference to a requirement that the checkpoint be "permanent." *See generally*, W. Ringel, *Searches and Seizures, Arrests and Confessions* §§ 11.2(d), 15.5(a)(2) (2d ed. 1979).

On the other hand, in *State v. Halverson*, —— S.D. ——, 277 N.W.2d 723 (1979), the South Dakota court approved a game check site which admittedly was not "permanent." And it may be significant that the *Prouse* Court, in ultimately referring to license and registration stops, did not use the "permanent checkpoint" dichotomy so frequently employed in the border patrol cases, but referred to "[q]uestioning of all oncoming traffic at roadblock-type stops." 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 674.

■ In any event, we may distill from the above opinions the following conclusions: Where there is no consent, probable cause, or *Terry*-type reasonable and articulable suspicion, a vehicle stop may be made only where there minimally exists (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to "show . . . the police power of the community;" and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria.

■ Under the above federal decisions it is clear the stops involved in these appeals do not meet fourth amendment requirements. The "checkpoint" or "roadblock" was haphazardly located by officers in the field. They attempted to stop motorists at night, using only the red lights on their vehicles and flashlight signals. There were

no prewarning signs or lights, nor any illumination designed to disclose the officers' uniforms or the official nature of their cars. No system was devised to stop traffic systematically and to maintain the roadblock for a significant period; in fact, on each night, as soon as an arrest was made, the roadblock was abandoned. In the balancing equation, stopping motorists for the purposes advanced here might have even less public benefit than a stop to check illegal immigration or drivers' licenses. *See United States v. Montgomery*, 561 F.2d at 886; *People v. Gale*, 46 Cal.2d 253, 256, 294 P.2d 13, 15 (1956); *Wirin v. Horrall*, 85 Cal. App.2d 497, 193 P.2d 470 (1948).

We reemphasize that our holding in these appeals does not affect the search of a vehicle without a warrant when exigent circumstances and probable cause exist. *State v. McReynolds*, 195 N.W.2d 102, 105 (Iowa 1972); *State v. King*, 191 N.W.2d at 654–55; *see State v. Shea*, 218 N.W.2d at 613. Nor does it affect the legality of an investigatory stop of a vehicle where the officer possesses objective facts disclosing a specific and articulable cause reasonably to believe criminal activity is afoot. *State v. Dixon*, 241 N.W.2d 21, 23 (Iowa 1976); *see State v. Reese*, 259 N.W.2d at 795; *State v. Donnell*, 239 N.W.2d at 577–78. Of course, the right to stop a vehicle where there is probable cause to arrest for a traffic violation is not implicated. *State v. Farrell*, 242 N.W.2d at 329.

We understand the frustration of the Oelwein law officers, confronted with a wave of vandalism and destruction in the city park, and their resulting efforts to identify the culprits. But the broader goals of the United States Constitution, as interpreted by the United States Supreme Court, must prevail:

> The needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power. It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards.

*Almeida-Sanchez*, 413 U.S. at 273, 93 S.Ct. at 2540, 37 L.Ed.2d at 603.

The vehicle stops in this case violated the fourth amendment rights of these defendants. We are not required to make a determination of the requirements of the Iowa Constitution. Because the evidence relating to the guilt of these defendants must be suppressed, it is clear no purpose would be served by remanding these cases. *See State v. Reese*, 259 N.W.2d at 796. Each of these three cases is therefore reversed, but not remanded.

REVERSED BUT NOT REMANDED.

All Justices concur except McGIVERIN, J., who concurs in the result.