**STATE of Iowa, Plaintiff–Appellee,**

v.

**Milton Harold OHLSEN, Defendant–Appellant.**

**No. 94–1143.**

Court of Appeals of Iowa.

June 27, 1995.

John A. Stitely of the William F. Olinger Law Firm, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Denver D. Dillard, County Attorney, and Laurie Craig, Assistant County Attorney, for appellee.

Heard by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

On January 1, 1993, at 11:45 a.m., Iowa City police officer Deborah Petersen was dispatched to the New Life Fitness World to investigate an alleged assault. When she arrived, Officer Petersen talked with Paul Hartl and Melvin Gould. Each claimed he had been assaulted by the other. During the course of their conversation, Officer Petersen learned Gould and the defendant, Milton Ohl-

sen, were employees at New Life and lived with Steve Frederich in Hartl's old apartment. Gould and Ohlsen had moved out that morning and were living temporarily at the Exel Inn in Cedar Rapids. Ohlsen had been at New Life earlier that morning but was on his way back to the motel room.

Hartl told Officer Petersen that Gould and Ohlsen were in possession of stolen weapons. The weapons were identified as a Glock 9mm semi-automatic pistol and an AK–47 assault rifle. Hartl additionally told Petersen that Ohlsen and Gould often had the weapons with them in their vehicle. Hartl further told Petersen he had heard Ohlsen and Gould discussing their intent to deal in drugs. Hartl stated Gould and Ohlsen had stolen a credit card from Frederich and made illegal purchases with it.

Upon receiving this information, Officer Petersen talked to Gould. Gould confirmed he and Ohlsen had weapons and Ohlsen would be in possession of them either on his person, in his vehicle, or in the motel room. Officer Petersen then obtained a description of Ohlsen and the vehicle he was driving. At 12:15 p.m., Officer Petersen put out an attempt to locate bulletin which was teletyped to the Cedar Rapids police. The bulletin included a description of Ohlsen, his vehicle, and the weapons he allegedly possessed. At 12:30 p.m., Cedar Rapids police officer James Kinkead heard the police broadcast and soon spotted a pickup matching the description of Ohlsen's truck. He followed the truck to the Exel Inn. Kinkead parked his squad car about forty feet behind Ohlsen's truck, turned on his red lights, and yelled to the driver to put up his hands. Ohlsen complied but several times attempted to lower his hands. Officer Kinkead called for a backup.

A few minutes later Officer John Lala and another officer arrived. While Ohlsen was distracted by two officers coming from his left, Lala approached from the right and opened the vehicle's right door, reached in, and grabbed Ohlsen's right hand. The other officers grabbed Ohlsen's other hand, and ultimately Officer Lala retrieved the Glock revolver from Ohlsen's lap. Ohlsen was re-

moved from his truck and asked if he had a gun permit. He replied that he did not, at which time he was arrested for carrying a concealed weapon without a permit.

Ohlsen subsequently filed a motion to suppress evidence of the stop. Following a hearing, the district court ruled the stop was proper. Ohlsen requested permission to file an interlocutory appeal but permission was denied and the case proceeded to trial on the stipulated facts. Ohlsen was found guilty as charged and was sentenced to a $1000 fine plus a thirty percent surcharge. Ohlsen appeals.

■ Ohlsen contends there was no probable cause for his arrest and the standard for an investigatory stop was not met. Ohlsen further argues the stop was more intrusive than the law allows. When constitutional rights, such as search and seizure rights, are at issue, our review is de novo. *State v. Lamp,* 322 N.W.2d 48, 50 (Iowa 1982).

■ The Fourth Amendment of the federal constitution, as applied to the states through the Fourteenth Amendment, requires an officer to have reasonable cause to stop a vehicle for investigatory purposes. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 906 (1968); *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980); *State v. Cooley,* 229 N.W.2d 755, 759 (Iowa 1975). In order to show reasonable cause, the State must show the officer had "specific and articulable cause to support a reasonable belief that criminal activity may have occurred." *State v. Wiese,* 525 N.W.2d 412, 414 (Iowa 1994) (quoting *Aschenbrenner,* 289 N.W.2d at 619). Reasonable cause is a less demanding standard than probable cause.[1]

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion

---

1. The terms "reasonable cause" and "reasonable suspicion" are used interchangeably in the context of investigatory stops and the Fourth Amendment.

can arise from information that is less reliable than that required to show probable cause. *Adams v. Williams,* [407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)] demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a Terry stop. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability.... Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990) (citation omitted). The relevant inquiry is whether the totality of the circumstances demonstrates reasonable suspicion. *Id.*

■ Our supreme court has discussed the proper analysis in a case involving an investigatory stop based upon a communication between law enforcement officers. In order to uphold such a stop, the State must show "(1) the officer making the stop acted in objective reliance on the communication, (2) the agency which issued the communication possessed a reasonable suspicion justifying a stop, and (3) the stop which was made was not significantly more intrusive than would have been permitted the agency issuing the communication." *State v. Bailey,* 452 N.W.2d 181, 183 (Iowa 1990) (citing *United States v. Hensley,* 469 U.S. 221, 233, 105 S.Ct. 675, 682, 83 L.Ed.2d 604, 615 (1985)). The stop may only be upheld based upon reasons which actually existed at the time of the stop, not reasons which might have existed. *Bailey,* 452 N.W.2d at 182; *Lamp,* 322 N.W.2d at 51; *Aschenbrenner,* 289 N.W.2d at 619; *Cooley,* 229 N.W.2d at 757–59.

■ To meet the first requirement of *Bailey,* it must be shown Officer Kinkead acted in objective reliance on the radio communication in stopping Ohlsen. The attempt to locate (ATL) from Iowa City to Cedar Rapids included a heading of "POSS 10–32 SUBJECT," meaning the subject was possibly armed. Also included in the ATL was a description of the vehicle, a description of the subject, and information regarding the reasons for the ATL.[2] After hearing a radio broadcast of the ATL, Officer Kinkead saw a vehicle and driver matching the description on the ATL. When the vehicle proceeded to the Exel Inn, Officer Kinkead was reasonably sure he had the correct person. The record supports a finding Officer Kinkead acted in objective reliance on the radio communication in stopping Ohlsen.

The second requirement of *Bailey* is there must be a showing the Iowa City police had a reasonable suspicion justifying the stop. The reliability of the information, upon which the Iowa City police were relying, was high. Both Paul Hartl and Melvin Gould were private citizens as opposed to paid informants or anonymous tipsters. Further, the information the police received from these citizens created reasonable suspicion. Hartl told Officer Petersen, outside the presence of Gould, that he had observed Ohlsen and Gould being in possession of weapons, and that Ohlsen "had made comments frequently that the weapons were stolen." Hartl specifically identified the weapons as an AK–47 and a Glock. Gould told Officer Petersen he and Ohlsen were in possession of a Glock and an AK–47, and that Ohlsen would have the weapons either in his truck or in the motel room. This information, in addition to the reliability of the informants, provided a basis for reasonable cause to justify the stop of Ohlsen in Cedar Rapids.

■ Finally, it must also be shown the stop made by Officer Kinkead was not significantly more intrusive than would have been permitted if the Iowa City police had made the stop. If the Iowa City police had made the stop, they would have been required to

2. The ATL stated:
   10–76 EXEL INN OR ROBS AUTO BODY IN CEDAR RAPIDS
   POSSIBLY CARRYING A GLOCK A47 [SIC] IN VEH OR MOTEL RM 5
   OFFICER REQUESTING WE CHECK FOR WEAPONS ... POSSIBLE CHARGES ARE PENDING, REF AN INVESTIGATION OF FRAUD AND THEFT

employ the least intrusive method reasonably available to investigate the suspicion in a short amount of time. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983). This is the standard to which the Cedar Rapids police are also held in this situation.

 In determining the least intrusive means, we must weigh the competing interests of the police officer and the private individual. "In general, officers may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo,' so that the limited purposes of the stop may be achieved." *United States v. Jones*, 759 F.2d 633, 636 (8th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985) (quoting *Hensley*, 469 U.S. at 235, 105 S.Ct. at 684, 83 L.Ed.2d at 616). It has been held that neither the partial blocking of a suspect's automobile, nor the officers' approach to a suspect's car with guns drawn elevates an investigative stop into an arrest "if the police action is reasonable under the circumstances." *Jones*, 759 F.2d at 638.

We find Officer Kinkead's actions to be reasonable under the circumstances.[3] When Officer Kinkead stopped Ohlsen, Officer Kinkead was the only police officer present. Given his knowledge at the time of the stop, Officer Kinkead had good reason to assume Ohlsen was possibly armed. During the stop, Ohlsen attempted to lower his hands several times. In addition, Officer Kinkead reduced the likelihood of a possible armed encounter by taking immediate action, rather than waiting until Ohlsen exited his truck and entered the motel room. In conclusion, we find the methods employed by the Cedar Rapids police to be the least intrusive in this situation.

We find the investigatory stop made by Officer Kinkead must be upheld. All of the requirements set out in *Bailey* have been met. We affirm the ruling of the district court.

**AFFIRMED.**

---

3. In *Jones*, the court suggests a number of factors to consider in determining whether the force used by the police is reasonable. They include: (1) the number of officers and police cars involved; (2) the nature of the crime and whether there was reason to believe the suspect might be armed; (3) the strength of the officers' articulable objective suspicions; (4) the erratic behavior of or suspicious movements by the persons under observation; and (5) the need for immediate action by the officers and the lack of opportunity for them to have made the stop in less threatening circumstances. *Jones*, 759 F.2d at 639–40.