OPINION
Appellant, the State of Ohio, appeals the judgment entry of the Portage County Municipal Court, which suppressed evidence of the arrest, field sobriety tests, and blood alcohol test of appellee, Benjamin Havens, Jr.
At the January 12, 1999 hearing on appellee's motion to suppress, it was revealed that the Ohio State Highway Patrol and Ravenna Police Department set up a sobriety checkpoint at mile marker 11 on State Route 14, on September 19 and 20, 1998. According to the stipulated facts of the parties, the State Highway Patrol issued three media releases concerning the checkpoint. The first release was issued on Monday, September 14 and stated that the checkpoint would be operated on Saturday in Portage County with the exact location to be disclosed on Saturday. The second release was issued on Friday, September 18 and similarly stated that the checkpoint would be operated on Saturday in Portage County with the exact location to be disclosed on Saturday afternoon. The third and final release, issued in the afternoon of Saturday, September 19, read as follows:
 "The Ohio State Highway Patrol confirmed today that troopers and Ravenna Police officers will be operating a sobriety checkpoint tonight on State Route 14, at the Ravenna city limits. The checkpoint will operate from 11:00 p.m. to 3:00 a.m."
 This checkpoint was located at the intersection of State Route 14 and Lover's Lane near the border between Ravenna Township and the city of Ravenna. At this intersection, State Route 14 is a four-lane highway; one lane in each direction was closed by using traffic cones, programmable arrows, and orange traffic barrels. Floodlights illuminated the entire area and signs reading "sobriety checkpoint ahead" labeled the area. Drivers approaching from either direction could see the checkpoint at a distance of over 2,000 feet. Motorists could avoid the checkpoint by turning onto State Routes 44 or 88. As cars passed through the checkpoint, officers would look for signs of intoxication and ask for identification. The goal of the officers was to delay vehicles no more than fifteen seconds. Six hundred ninety-eight motorists went through the checkpoint and nine DUI arrests were made, approximately 1.3% of all drivers.
The state called Sergeant John S. Lenkey of the State Highway Patrol, who observed appellee drive through the checkpoint at 1:28 a.m. The officers at the scene suspected, because of appellee's blank stare, that he was intoxicated. When Sergeant Lenkey went to appellee's door, he immediately noticed a strong odor of alcohol. He had appellee pull off into the diversion area and administered field sobriety tests, which he failed. After appellee admitted to drinking three beers, Sergeant Lenkey placed him under arrest. A later breathalyzer test revealed that appellee's blood alcohol content was 0.154%.
On October 4, 1999, the trial court sustained appellee's motion to suppress. It ruled that the three media releases were ambiguous and deficient to warn the general public about the impending roadblock because there were three intersections that could fall within the description and that the State did not strictly comply with the procedures set forth in its protocol for setting up sobriety checkpoints. It further wrote:
 "It is the opinion of this court that to balance the public interest and the individual's Fourth Amendment rights, as well as alleviate fear for the average motorist, the State must provide the public with the exact time and location of the sobriety checkpoint. Further, said release should be done in a timely manner and communicated at a reasonable time prior to the institution of the checkpoint. The afternoon prior to the set up of the checkpoint does not seem reasonable notice for the average driver. A reasonable release of notice would coincide with the [S]tate's objective of communicating the message regarding drunk driving, and deterring the same."
The State appeals, pursuant to Crim.R. 12(J), and raises the following assignment of error:
 "The trial court erred when it suppressed defendant-appellee's arrest, the results of defendant-appellee's B.A.C. test and field sobriety tests, all of which resulted from a properly established, operated and advertised sobriety checkpoint."
 In its assignment of error, appellant asserts that the stop and arrest of appellee at a sobriety checkpoint was constitutional.
The United States Supreme Court has held that a state's use of sobriety checkpoints does not violate the Fourth or Fourteenth Amendments to the United States Constitution. Michigan Dept. of State Police v. Sitz
(1990), 496 U.S. 444, 110 S.Ct. 2481. In Sitz, the Court held that a stop at a sobriety checkpoint was a Fourth Amendment "seizure" with the potential to generate fear and surprise in the average law-abiding citizen. However, these intrusions on the motorists were lessened by seeing other motorists being stopped and signs of the police officers' authority. Id. at 453. Furthermore, these intrusions were outweighed by the state's interest in combating the grave dangers associated with drunk driving. Sitz addressed only the federal constitutionality of sobriety checkpoints in general and did not address the specific procedures used when instituting them. The Court certainly did not require the police to inform the public of the exact location of the checkpoint in order for it to comply with the constitution.
Although a particular police practice may be valid under the United States Constitution, state courts are free to construe their state constitutions as providing different or even broader individual liberties than those provided under the federal Constitution. Arnold v. Cleveland
(1993), 67 Ohio St.3d 35, 41, 616 N.E.2d 163; California v. Greenwood
(1988), 486 U.S. 35, 43, 108 S.Ct. 1625. The Supreme Court of Ohio has not ruled on a case involving sobriety checkpoints. In State v.Robinette (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, which held that consent to a police search was valid even though the subject of the search was unaware that he could refuse the search request, the court stated that the provisions of Section 14, Article I of the Ohio Constitution provided no more protection than the Fourth Amendment to the federal constitution because "[t]he language of [the two provisions] is virtually identical." Id.
In dicta, the court wrote:
 "* * * the United States Supreme Court has determined that sobriety checkpoints are constitutional if the initial intrusion and detention are minimal and the detention serves the public interest. The test was set out in Brown v. Texas (1979), 443 U.S. 47, 99 S.Ct. 2637, wherein the court weighed `the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.' (Citation omitted.)
 "In sum, [Florida v.] Royer [(1983), 460 U.S. 491, 103 S.Ct. 1319] and Brown set out a standard whereby police officers, under certain circumstances, may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., removing drunk drivers from public roadways or reducing drug trade." Id. at 240-241.
Other Ohio courts have ruled that sobriety checkpoints are constitutional. In State v. Goines (1984), 16 Ohio App.3d 168,474 N.E.2d 1219, the Second Appellate District, citing the Iowa Supreme Court decision State v. Hilleshiem (Iowa 1980), 291 N.W.2d 314, set forth requirements for a checkpoint or roadblock to check the safety features as follows:
 "(1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists;
 "(2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion;
 "(3) uniformed officers and official vehicles in sufficient quantity and visibility `to show * * * the police power of the community;' and
 "(4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria." Id. at 318.
We cited the Goines decision and ruled that "[a] safety search conducted in a non-random fashion at a fixed point does not run afoul of the Fourth Amendment prohibition against unreasonable searches and seizures." State v. Daniels (Dec. 23, 1994), Trumbull App. No. 92-T-4730, unreported. The Tenth Appellate District cited Goines in a case upholding the constitutionality of sobriety checkpoints. State v.Bauer (1994), 99 Ohio App.3d 505, 651 N.E.2d 46. In Bauer, the court, when presented with an identical challenge regarding dissemination of checkpoint information to the local media, ruled that media notification was not required and that it found no case that had held that pre-checkpoint publicity was required under the constitution.
We agree with the holding in Bauer and hold that a stop that comports with the factors set forth in Goines satisfies the search and seizure requirements of both the Ohio and United States Constitutions. These factors are satisfactory to address concerns of the safety of officers and motorists and lessen the fear of motorists by requiring a clear display of police presence and the purpose of the roadblock. The requirements further lessen the exercise of arbitrary discretion by the officers operating the checkpoint by providing that the decisions about the operation of the roadblock be made by policy-making administrative officers. While the release of the location of the checkpoint to the media is not intended to assist motorists wishing to avoid it, such notice would present further evidence that the checkpoint was authorized and predetermined by adminstrative officers.
The trial court questioned whether the site complied with the first standard set forth in Goines but did not rule that the standard was not satisfied. The trial court determined that the checkpoint met the second and third criteria with regard to officer visibility and illumination and advanced warning signs. It misinterpreted the fourth criterion as requiring advanced disclosure of the exact location of the checkpoint through the media. Appellant's assignment of error has merit.
We reverse and remand for the trial court to determine whether the checkpoint complied with the four criteria cited in Goines and to take other action consistent with this opinion.
 _______________________ ROBERT A. NADER, JUDGE
FORD, P.J., CHRISTLEY, J., concur.