OPINION
This timely appeal arises from the trial court's dismissal of a charge against Appellant for violating R.C. § 4507.02(B)(1), driving under a financial responsibility suspension. For the following reasons, the judgment of the trial court is affirmed.
On July 2, 1998, Appellee William H. Stoneking was cited for driving under FRA suspension in violation of R.C. § 4507.02(B)(1). At his initial appearance on July 17, 1998, Appellee entered a plea of not guilty. Following a pre-trial hearing on August 25, 1998, the trial court granted the State of Ohio fourteen days to file legal authority which would justify the stop of Appellee's vehicle. This entry was apparently prompted by Appellee's oral motion to suppress or dismiss, although the record does not confirm it. On August 28, the State filed a memorandum with the trial court which read in pertinent part:
 "On July 2, 1998, Trooper Jerico set up a vehicle safely [sic] check on US. 40 at 8:44 a.m. (See attached log).
 "In the course of the vehicle inspection, the trooper stopped the defendant and learned he was driving under an FRA suspension. The defendant was cited by Trooper Jerico.
 "The defendant claims the stop was random and violated Ohio law. However, in Delaware v. Prouse, 440 U.S. 648
(1979), the Supreme Court held that only random vehicle checks violate the Fourth amendment rights.
 "In State v. Goines [(1984), 16 Ohio App.3d 168], * * * the court held that `evidence obtained in a safety search made from a designated checkpoint indicating that the driver of the stopped vehicle was driving under a suspension * * * is not obtained in violation the Fourth Amendment and is thus admissible.' This case is directly on point as evidenced by the log indicating that Trooper Jerico was working at at [sic] traffic checkpoint at the time of the citation."
The "attached log" to which Appellant referred purports to serve as evidence of a pre-determined safety checkpoint conducted by Trooper Jerico. However, Appellant offered no explanation of the contents of the log, nor is it authenticated by affidavit or in any other manner.
On September 24, 1998, Appellee filed a "Motion to Dismiss," wherein he also relied on State v. Goines, supra. Appellee asserted that pursuant to this authority, a stop at a safety checkpoint is valid only if the checkpoint has been previously designated and was not set at the whim of the officer.
On October 26, 1998, the trial court filed a journal entry whereby it noted that State v. Goines provided that the location of fixed checkpoints was to be determined, "* * * not by officers in the field, but by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources." The court also stated that pursuant to R.C. § 4513.02(c), safety check-points are to conform with standards promulgated by the superintendent of the State Highway Patrol. The court granted Appellant fourteen days to submit evidence that the stop of Appellee conformed to these standards.
On November 11, 1998, the trial court filed a journal entry granting Appellee's motion to dismiss. The court noted that Appellant failed to provide sufficient evidence that the checkpoint at which Appellee's vehicle was stopped conformed to statutory and case law.
On November 19, 1998, Appellant filed a notice of appeal pursuant to Crim.R. 12(J). Appellant's sole assignment of error alleges:
 "THE TRIAL COURT ERRED IN GRANTING APPELL[EE]'S MOTION TO DISMISS BECAUSE TROOPER JERICO'S STOP OF APPELL[EE] AT A SAFETY CHECKPOINT DID NOT VIOLATE APPELL[EE]'S RIGHTS UNDER THE STATE AND U.S. CONSTITUTION."
Appellant sets forth that in Delaware v. Prouse (1979), 440 U.S. 648, the United States Supreme Court recognized a need for safety inspections as long as stops were not random, or at the "whim" of police officers. Appellant stresses that the Court did not prohibit less intrusive checks or ones that do not involve unconstrained exercise of discretion. Reiterating its reliance on State v. Goines, supra, Appellant states that in that case, a state trooper was involved as part of a, "calculated pattern of inspecting cars at a designated checkpoint." According to Appellant, the trooper would flag down the next available motorist after he completed the inspection of a vehicle. The court ruled that such a stop did not violate the motorist's Fourth Amendment rights. State v.Goines, 172. Appellant concludes that the present case is analogous toGoines in that Trooper Jerico was not conducting random safety checks with unbridled discretion. Appellant asserts that the touchstone of theFourth Amendment is reasonableness and that Jerico's conduct was reasonable. Finally, Appellant asserts, with no explanation, that, "[i]n the alternative, the Trial Court should have asked for an evidentiary hearing before sustaining Appell[ee]'s Motion."
In response, Appellee does not challenge the State's reading ofDelaware v. Prouse, supra. Likewise, Appellee does not challenge that the court in State v. Goines held that evidence obtained as the result of a calculated pattern of inspecting cars at a checkpoint is legally obtained. However, Appellee agrees with the trial court's interpretation of State v. Goines that the location of a fixed checkpoint is to be chosen by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources. Appellee asserts that in the present matter there is nothing on the record to indicate that the stop was anything but random and that there is no evidence that the checkpoint was chosen by responsible officials.
Based on the record before us and the relevant law, Appellant's assignment of error lacks merit.
It should be noted that Appellee styled his motion before the trial court as a motion to dismiss, claiming that the stop leading to his citation was in violation of the Fourth Amendment. This Court has held that there is no provision in the Ohio Rules of Criminal Procedure regarding a motion to dismiss on Fourth Amendment grounds. State v.Lloyd (Apr. 15, 1998), Belmont App. No. 96 BA 31, unreported, citing Cityof Cleveland v. Shields (1995), 105 Ohio App.3d 118, 123 (Blackmon, J., concurring), citing State v. Hartley (1988), 51 Ohio App.3d 47, 48. "The proper remedy for Fourth Amendment violations is suppression of the evidence, not dismissal of the charges." State v. Hartley, 48 citingBlanchester v. Hester (1992), 81 Ohio App.3d 815, 820. Therefore, the present matter is properly reviewed under the same standard of review as a motion to suppress. State v. Beall (Mar. 18, 1999) Belmont App. No. 94-B-43, unreported, *4.
An appellate court will not disturb a trial court's decision on a motion to suppress when it is supported by competent, credible evidence.State v. Winand (1996), 116 Ohio App.3d 286, 288, citing Tallmadge v.McCoy (1994), 96 Ohio App.3d 604, 608. An appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. Kobi (1997), 122 Ohio App.3d 160, 168, citingState v. Guysinger (1993), 86 Ohio App.3d 592, 594. While accepting that the facts as found by the trial court are true, an appellate court must then, "* * * independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the legal standards * * *" applicable to the case. Lloyd, supra [citations omitted]; State v. Brown (1996), 116 Ohio App.3d 477, 481.
A motion to suppress evidence as illegally obtained is properly raised in a pre-trial motion under Crim.R. 12(B)(3). "The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Crim.R. 12(E). In the present case, the trial court found that there was insufficient evidence to establish that the stop of Appellee conformed with existing statutory and state law. As noted earlier, the trial court adopted the position that a fixed checkpoint must be chosen by responsible officials, not an officer in the field. The record in the present case supports a conclusion that there was no factual basis to support the State's position.
The record reflects that neither Appellee nor the prosecution on behalf of the State requested a hearing on the motion. Rather, the trial court permitted the parties to respond by brief and to submit evidence in support of their respective positions. The state presented only a photocopy of Trooper Jerico's log in support of the contention that Jerico stopped Appellee as part of a pre-determined safety inspection checkpoint. As noted earlier, the log is indecipherable and without explanation or verification from the State or Jerico. The log does not in any manner suggest that the stop was anything but at Jerico's discretion. Based on the State's meager submission, the record supports the trial court's factual conclusion.
Turning to the question of whether the facts meet the legal standard, in Delaware v. Prouse, supra, the United States Supreme Court recognized the vital interest in ensuring that vehicles are fit for safe operation and that inspection requirements are observed. Id., 658. However, the Court determined that the random stop of a driver is unreasonable under the Fourth Amendment absent reasonable and articulable suspicion that the driver is unlicenced or that he is otherwise subject to seizure for violation of the law. Id., 663.
 "This holding does not preclude [the States] from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers."
Id.
While the Court in Prouse stated in dicta that a roadblock-type stop of all oncoming vehicles is a permissible method of conducting inspections, it did not expound on any further requirements for or limitations on such police activity. In Michigan Dept. of State Police v. Sitz (1990),496 U.S. 444, the U.S. Supreme Court addressed the permissibility of a roadblock-type sobriety checkpoint. However, there is no controlling authority regarding the use of a roadblock-type vehicle safety inspection point, as is at issue here, where the interests are significantly different. The most comprehensive analysis of the issue was by the Second Appellate District in State v. Goines, supra. The court there recognized that R.C. § 4513.02 requires that vehicles be safe for travel and that a driver submit to a safety inspection as directed by a state highway patrolman. State v. Goines, 171. However, the court also stated that, "[i]nsofar as R.C. 4513.02(B) would permit the random stop of automobiles, it must be read in conjunction with Delaware v. Prouse,supra." State v. Goines, 171. The Goines court considered an Iowa Supreme Court decision which set forth guidelines to gauge the permissibility of a checkpoint stop in light of Prouse:
 "* * * where there is no consent, probable cause, or Terry-type reasonable and articulable suspicion, a vehicle stop may be made only where there minimally exists (1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to `show * * * the police power of the community,' and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria."
 State v. Hilleshiem (Iowa 1980), 291 N.W.2d 314, 318 quoted in Statev. Goines, 170-171. The Goines court affirmed the permissibility of the stop of the appellant therein as,
 "* * * the facts suggest the stopping was not an unbridled act of whim, but was part of a calculated pattern of inspecting automobiles at a designated checkpoint. [The officer] stated that after he had completed the inspection of one vehicle, he flagged down the next available motorist, who happened to be the appellant."
 State v. Goines, 171.
It is clear that if we were to follow the standards set forth inGoines, the evidence submitted by Appellant would not support that Appellee was stopped as part of a calculated pattern. However, it is not necessary for us to adopt or extensively analyze Goines or any other standard for safety checkpoints. The meager offering of evidence by the State does not even rise to the threshold showing required in Delawarev. Prouse that the stop was not at the unbridled discretion of the police officers. As noted earlier, the unauthenticated and indecipherable log gives no indication that the stop of Appellee was other than at the discretion or whim of Trooper Jerico. Had there been some evidence that an actual roadblock inspection point was implemented, then a detailed analysis under Goines would be appropriate. In short, we are unable to determine the constitutionality of the roadblock at which Appellee was stopped as Appellant has failed to produce any evidence that the stop was anything other than random.
Accordingly, we hold that Appellant's assignment of error lacks merit and affirm the judgment of the trial court.
 _______________ WAITE, J.
Donofrio, J., concurs, Vukovich, P.J., concurs.