The STATE of Ohio, Appellant,

v.

WILLIAMS, Appellee.

[Cite as *State v. Williams*, 181 Ohio App.3d 472, 2009-Ohio-970.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–080609 and C–080610.

Decided March 6, 2009.

474

John P. Curp, Cincinnati Solicitor, Ernest F. McAdams Jr., Cincinnati City Prosecutor, and Kevin O. Donovan, Senior Assistant City Prosecutor, for appellant.

Patrick J. Hanley, for appellee.

---

MARK P. PAINTER, Judge.

{¶ 1} Sobriety checkpoints have long been scrutinized under the Fourth Amendment's prohibition against unreasonable seizures. In this case, the trial court ruled that defendant-appellee Gerald Williams's stop was unconstitutional because he missed the advance-warning signs. The state appeals the trial court's entry suppressing the evidence against Williams. We reverse.

## I. Missing the Sign

{¶ 2} In January 2008, the Ohio State Highway Patrol and the Cincinnati Police set up a sobriety checkpoint in an area where several drunk-driving accidents had occurred. The police planned the checkpoint according to training-manual procedures and used drawings and measurements to establish the distances and positions for warning signs. The flashing lights of police vehicles signaled the stop. Media coverage had announced the location and time of the checkpoint. Finally, advance-warning signs were placed approximately 857 feet from the start of the checkpoint traveling northbound and 760 feet from the checkpoint traveling southbound. The area was well lit by streetlights, and the signs were set on the sidewalk near the street. As drivers approached the checkpoint, these signs would be illuminated by their headlights, and the cars eventually merged into one lane.

{¶ 3} After toasting birthday cheers at the Ducksters Supper Club, Williams left with his wife and two relatives. Williams testified that as he left from the parking lot, he did not see the advance-warning sign because the sign had been placed immediately adjacent to the exit. But Officer Mike Flamm testified that the advance-warning sign was stationed 20 feet north of Summit Road, which was the intersecting street along the checkpoint route. Williams testified that the parking lot was about 60 feet north of Summit Road. After turning right onto the checkpoint route, Williams traveled about 40 feet down the route before he reached the sign.

{¶ 4} Unaware of the oncoming checkpoint, Williams drove down the street until greeted by flashing lights, orange cones, and a tree light. Cones merged all the cars into one lane, and the traffic began to stop. Before Williams realized that he was entering a sobriety checkpoint, he was already in it. Williams was questioned and charged with both driving under the influence [1] and driving with a concentration of alcohol higher than the law permitted.[2]

{¶ 5} The trial court ruled that Williams's stop was unconstitutional because he did not notice the advance-warning sign. The trial court further reasoned that the stop had invaded his privacy and constituted an unreasonable seizure in violation of the Fourth Amendment. But Williams had ample opportunity to notice the advance-warning sign. And although he may not have seen the sign, we hold that other factors relevant to the constitutionality of the checkpoint and other notices minimizing the invasion of privacy made the stop constitutional.

---

1. R.C. 4511.19(A)(1)(a).

2. R.C. 4511.19(A)(1)(d).

## II.   Motion to Suppress

{¶ 6} The United States Supreme Court has set the standard for determining the constitutionality of a sobriety checkpoint. It has espoused a three-part balancing test to determine the reasonableness of stops and seizures under the Fourth Amendment. "Consideration of the constitutionality of such seizures involves (1) a weighing of the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty."[3]

{¶ 7} Individual liberty, or privacy, has further been broken down into objective and subjective intrusions. An objective intrusion is based on "the duration of the seizure and the intensity of the investigation," while a subjective intrusion is based on "the fear and surprise engendered in law-abiding motorists by the nature of the stop."[4]

{¶ 8} While the three-part test used by the U.S. Supreme Court is more general, the Second Appellate District in *State v. Goines* has adopted a more particular analysis to determine the constitutionality of sobriety checkpoints.[5] A vehicle may be stopped where all of the following factors are present: "(1) a checkpoint or roadblock location selected for its safety and visibility to oncoming motorists; (2) adequate advance warning signs, illuminated at night, timely informing approaching motorists of the nature of the impending intrusion; (3) uniformed officers and official vehicles in sufficient quantity and visibility to show the police power of the community; and (4) a predetermination by policy-making administrative officers of the roadblock location, time, and procedures to be employed, pursuant to carefully formulated standards and neutral criteria."[6] We also adopt the *Goines* test, which was developed by the Iowa Supreme Court[7] and adopted in Ohio by the Second Appellate District.

{¶ 9} If the stop is unconstitutional, all the evidence obtained from the stop must be suppressed.[8] Because the stop in this case was only minimally intrusive

---

3. *Brown v. Texas* (1979), 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357; *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762.

4. *Michigan Dept. of State Police v. Sitz* (1990), 496 U.S. 444, 452, 110 S.Ct. 2481, 110 L.Ed.2d 412.

5. *State v. Goines* (1984), 16 Ohio App.3d 168, 16 OBR 178, 474 N.E.2d 1219, quoting *State v. Hilleshiem* (Iowa 1980), 291 N.W.2d 314, 318.

6. Id. at 171, 16 OBR 178, 474 N.E.2d 1219.

7. *State v. Hilleshiem* (Iowa 1980), 291 N.W.2d 314, 318.

8. Painter & Weiler, Ohio Driving under the Influence Law (2008), Section 8:23.

and easily passed the *Goines* test and was therefore constitutional, we reverse the trial court's decision granting the suppression motion.

### III. The Stop Passed the Goines Test

{¶ 10} The trial court determined that because Williams had missed the warning sign, he had not received adequate warning, and consequently that the stop was unconstitutional. We hold that Williams was adequately notified, and even if he did not receive actual notice, the *Goines* test was not violated.

{¶ 11} Advance-warning signs were placed at a distance that timely informed approaching motorists of the impending intrusion. There were other signs directing drivers to merge into one lane. Officer Flamm stated that the standard procedure was to place warning signs at least 750 feet in advance of the checkpoint to provide for timely notification. In this case, the warning sign for the southbound lane was placed even farther than what was required. Placing the sign any closer to the checkpoint would have jeopardized timely notification requirements under the checkpoint-procedure manual.

{¶ 12} There is no requirement that each driver must see the warning sign for a checkpoint to be constitutional. Warning signs are intended to provide general notification, and merely because one driver does not see a sign does not make his stop an unreasonable seizure while all others are reasonable. In this case, a driver traveling the southbound lane who happened to blink, sneeze, or look away could not have successfully argued that the stop was unconstitutional because he did not see the sign—and neither can Williams.

### IV. Properly Conducted Sobriety Checkpoints are Minimally Invasive

{¶ 13} The Supreme Court has held that a state's use of sobriety checkpoints does not violate the Fourth Amendment, and that the objective and subjective intrusion of privacy is minimal.[9] The fear and surprise of motorists— the subjective intrusion—are further lessened because "at traffic checkpoints the motorists can see that other vehicles are being stopped, [and] can see visible signs of the officers' authority."[10]

{¶ 14} Although Williams missed the advance-warning sign, he noticed the cones that merged the cars into one lane, as well as the police and the flashing lights. The fear and surprise that may have stemmed from this subjective intrusion would have been lessened when he saw other vehicles being stopped by the police. Thus, the intrusion on Williams's privacy was minimal.

---

9. *Michigan Dept. of State Police v. Sitz* at 452–453, 110 S.Ct. 2481, 110 L.Ed.2d 412.

10. Id. at 453, 110 S.Ct. 2481, 110 L.Ed.2d 412.

### V. Two Other Factors Determining the Constitutionality of a Checkpoint

{¶ 15} The Supreme Court has used three balancing factors to determine the constitutionality of a checkpoint. We have so far focused only on the degree of interference. Two other factors should also be weighed: the gravity of the public concerns served by the seizure and the degree to which the seizure advances the public interest.[11] Three previous accidents had occurred on this stretch of road due to impaired driving. Reducing the number of people driving under the influence in this area certainly advanced the public interest.

### VI. Advance Publicity

{¶ 16} Finally, media publicity was used to further notify drivers of the checkpoint location and time. Although advance publicity is not absolutely required in planning checkpoints, the Fifth Appellate District has held that precheckpoint publicity "would serve to alert the driving public to the potential for sobriety checkpoints to be encountered on the roads, and promote rapid recognition by motorists arriving at one of these checkpoints."[12] Use of this advance publicity serves to give even greater notice of the checkpoint and results in a lesser intrusion of privacy.

### VII. No Fourth Amendment Violation

{¶ 17} The distance between where Williams had pulled onto the check-point route and where the warning sign had been placed gave Williams ample time to notice the sign. The sobriety checkpoint was carefully set up and operated according to planned procedures. And the other notices and warnings were sufficient to provide awareness and lessen the invasion of privacy on motorists. Further, in balancing other factors such as the public interest and the concern for safety, we hold that the public interest supported the constitutionality of the checkpoint and that the intrusion minimally invaded Williams's privacy. Thus, we reverse the trial court's judgment and remand this case for further proceedings in accordance with the law.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

---

11. *Brown v. Texas* at 51, 99 S.Ct. 2637, 61 L.Ed.2d 357.

12. *State v. Hall*, 5th Dist. No. 03–COA–064, 2004-Ohio-3302, 2004 WL 1405115.