# IN THE COURT OF APPEALS OF IOWA

No. 21-0496
Filed June 29, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHANE TIMOTHY BAKKE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dickinson County, David C. Larson,

District Associate Judge.


        The defendant appeals the district court's denial of his motion to suppress.

**REVERSED AND REMANDED.**


        Robert G. Rehkemper of Gourley, Rehkemper, & Lindholm, P.L.C., West

Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., Chicchelly, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**POTTERFIELD, Senior Judge.**

Shane Bakke was convicted of operating while intoxicated (OWI), first offense, in a bench trial on the minutes of testimony. On appeal, he challenges the denial of his motion to suppress, arguing the stop of his utility vehicle (UTV)[1] by a conservation officer, which was not supported by reasonable suspicion or probable cause, violated his constitutional rights—notwithstanding Iowa Code section 321I.27, which gives statutory authority for the stop.

**I. Background Facts and Proceedings.**

At approximately 9:00 p.m. on January 24, 2020, Conservation Officer Travis Graves saw a UTV being driven off the ice of a public lake onto private property near where he was standing. Using a flashlight and his arms, Officer Graves signaled for the driver to stop. The UTV was fully enclosed, and Officer Graves had no prior interaction with it; up to that point, he neither witnessed nor suspected any violation of the law.

When Officer Graves made contact with the driver—Bakke—he asked where the registration sticker was located on the UTV. Bakke opened his door to respond, at which point Officer Graves "could immediately smell an odor of alcohol coming from inside the cab. [Bakke] also had a slurred, thick tongue, mumbled

---

[1] All-terrain vehicles (ATV) and utility vehicles, as defined in Iowa Code section 321I.1(1) (2020), are governed by Iowa Code chapter 321I. *See* Iowa Code § 321I.1(17)(b) ("The operator of an off-road utility vehicle is subject to provisions governing the operation of all-terrain vehicles in section 321.234A, this chapter, and administrative rules . . . ."). Bakke does not contest that the side-by-side vehicle he was driving is a utility vehicle that is subject to the regulations of chapter 321I.

speech and bloodshot, watery eyes as well. There was also a case of beer in the front seat next to [him] . . . ." Bakke was eventually arrested for OWI.

He filed a motion to suppress, asserting the stop was unconstitutional because Officer Graves had neither probable cause nor reasonable suspicion that he had violated any laws at the time the officer stopped the UTV. Additionally, Bakke referenced section 321I.27, which states in part: "A peace officer may stop and inspect an all-terrain vehicle operated, parked, or stored on public streets, highways, public lands, public ice, or designated riding trails of the state to determine if the all-terrain vehicle is registered, numbered, or equipped as required by this chapter and commission rules." Bakke argued the statute "is unconstitutional on its face and as applied to" him.[2] He also argued that Officer Graves's stop was not conducted under the necessary requirements to qualify as a "checkpoint" or "roadblock" stop. *See, e.g.*, *State v. Hilleshiem*, 291 N.W.2d 314, 318–19 (Iowa 1980) (listing requirements for "checkpoint" stop to meet constitutional muster when there is not consent, probable cause, or *Terry*-type reasonable and articulable suspicion).

The State resisted Bakke's motion, relying on section 321I.27 for Conservation Officer Graves's authority to stop the UTV.

At the suppression hearing that followed, Officer Graves testified he initiated the stop to "make sure [the driver] ha[d] the proper registration and stuff they

---

[2] Bakke also argued section 321I.27 was not applicable because Officer Graves stopped him on private property—not the public lake. The district court rejected this argument, concluding the statute "authorizes a peace officer to stop and inspect an all-terrain vehicle operated on public ice, but the code section does not require that the stop and inspection occur while the all-terrain vehicle is still located on the public ice." Bakke does not renew this argument on appeal.

need[ed] to be operating the machine[] on—on public ice." He referenced the Iowa Code, testifying, "[t]here is a specific code section in our ATV code section, 321I that allows conservation officers to inspect ATVS or—for compliance with Iowa Code." When asked on cross-examination, Officer Graves agreed he was not running a designated checkpoint when he stopped Bakke and there was not any "signage to inform people" he was "there doing registration checks."

The district court denied Bakke's motion to suppress. Regarding Bakke's argument section 321I.27 is unconstitutional, the court ruled:

> Section 321I.27, Code of Iowa, does not involve an unconstrained exercise of discretion by peace officers. Section 321I.27, Code of Iowa, is limited to all-terrain vehicles which include UTVs as set out in Section 321I.1(17)(b), Code of Iowa, and Section 321I.27 is limited as to where the authority to stop and inspect an all-terrain vehicle may occur. Additionally, Section 321I.27 prohibits the officer from inspecting an area that is not essential to determine compliance with the registration requirements and it limits the officer to issuing a warning memorandum rather than a citation. Based upon the foregoing, the court concludes that Section 321I.27 is sufficiently limited in its scope such that it does not violate the Fourth Amendment of the United States Constitution or Article I, Section 8 of the Iowa Constitution and it is not unconstitutional on its face or as applied to Mr. Bakke.

Bakke appeals.

## II. Standard of Review.

Our review of the "district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right . . . is de novo." *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019).

## III. Discussion.

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by

the government."[3]  *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013).  Here, the State concedes that Officer Graves's stop of Bakke's UTV constituted a seizure—just as a traffic stop involving an automobile on the road does.  *Cf. Delaware v. Prouse,* 440 U.S. 648, 653 (1979) ("The Fourth and Fourteenth Amendments are implicated . . . because stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief.").  And it has never been disputed that Officer Graves had neither reasonable suspicion of an ongoing crime nor probable cause to believe a crime had been committed at the time he initiated the stop.  *See State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) ("A traffic stop is permissible under our Iowa and Federal Constitutions when supported by probable cause or reasonable suspicion of a crime.").  Therefore, the only question before us on appeal is whether section 321I.27 alone can be the basis for a constitutional stop of Bakke's UTV.

"It is the State's burden to prove that a warrantless . . . seizure is constitutional."  *State v. Wright*, 961 N.W.2d 396, 412 (Iowa 2021).  The State argues that Officer Graves's stop of Bakke's UTV in order to check his registration—pursuant to Officer Graves's authority under section 321I.27—is not unreasonable, so it did not violate Bakke's constitutional rights.  The State relies

---

[3] Bakke challenges the stop under both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.  He does not advocate for separate analyses.  *See Doss v. State*, 961 N.W.2d 701, 716 n.8 (Iowa 2021) ("[T]he State is constrained by both the United States and the Iowa Constitutions.  Although we encourage parties to present a separate analysis under the Iowa Constitution whenever appropriate, a party is entitled to put forward the same analysis in support of both federal and state claims.").

on *State v. Keehner*, 425 N.W.2d 41, 44 (Iowa 1988). In *Keehner*, a farmer observed a pickup truck on his neighbor's farm nearly every day during a multiple-week period. 425 N.W.2d at 42. The farmer believed the men in the truck were fox hunters based on his observations of them; he obtained the license plate number of the truck and learned it belonged to Keehner. *Id.* The farmer checked with his neighbors and learned that none had authorized hunting on their properties. *Id.* So the farmer called local law enforcement, who passed the information along to the conservation officer. *Id.* Around the same time period, the conservation officer received a tip from a hotline that Keehner was illegally deer hunting. *Id.* A few weeks later, the conservation officer was four miles from the farmer's property when he came upon what he recognized as Keehner's pickup, which was stopped on the side of the road with someone in the truck using a scope to view the field. *Id.* at 43. The conservation officer then put on his red lights and "stopped" the truck. *Id.* When the conservation officer approached, "[t]wo dead red fox were clearly visible in the pickup box." *Id.* The conservation officer asked Keehner for his hunting license and, when asked why he stopped him, told Keehner he thought he was hunting. *Id.* The officer checked Keehner's hunting license and then, noticing a gun on the passenger seat, asked to check the gun. *Id.* Keehner eventually allowed the conservation officer to check the gun, which was loaded. *Id.* As a result, Keehner was charged with carrying a loaded gun in a vehicle on a public highway. *Id.* at 41; *see also* Iowa Code § 110.36 (1987). "The district court concluded that [the conservation officer] did not have adequate grounds to reasonably believe that Keehner was hunting, legally or illegally. This

finding preempted a consideration of the constitutionality of the stop, the validity of the search, and the issue of consent to search." *Keenher*, 425 N.W.2d at 43.

On discretionary review, our supreme court noted "the constitutional permissibility of a particular law enforcement practice is determined by balancing its intrusion on the individual's [F]ourth [A]mendment interests against its promotion of legitimate governmental interests." *Id.* at 44 (citing *Prouse*, 440 U.S. at 654). The court recognized the conservation officer's stop of Keehner constituted a seizure, so the question was "whether the seizure was constitutionally reasonable." *Id.* at 44. In concluding the stop was reasonable, and therefore not a violation of Keehner's constitutional rights, the court relied on the fact that "the stop . . . resulted from the statutory authority granted to conservation officers to request and inspect hunting licenses." *Id.* (citing Iowa Code § 110.19, which required that "[e]very person shall, while . . . hunting . . . show the person's license, certificate or permit, to any peace officer . . . when requested by said persons to do so"). The court concluded, "[A]n individual engaging in activity that may reasonably be interpreted as hunting, knows that he or she may be stopped briefly and asked to display a license. Expectations to the contrary are unreasonable. Those expectations become no more reasonable if the hunter conducts the regulated activity from a vehicle." *Id.* at 45 (internal citation omitted). In reaching this conclusion, the court "balance[d] the State's interest in regulating its wildlife and the hunting thereof" and relied on the fact that the State's interest was "substantial." *Id.*

The State likens Officer Graves's stop of Bakke to the conservation officer's stop of Keehner. It argues the State's interest in regulating its public lands and

ice, the limited seizure that is necessary to accomplish the regulation—checking a person's ATV has the proper registration—and the fact the law gives the officer the authority to stop only after an individual voluntarily engages in an activity that is heavily regulated requires us to reach the same result as *Keehner*.

But we believe driving a UTV on public ice is more analogous to driving an automobile on a public road than it is to hunting wildlife. We recognize driving a UTV is not as "basic" and "pervasive" as traveling by automobile, but we think our ruling is controlled by *Prouse*, 440 U.S. at 662. In *Prouse*, an officer stopped an automobile just "to check the driver's license and registration"; prior to the stop, the officer "had observed neither traffic or equipment violations nor any suspicious activity." 440 U.S. at 650. In support of the stop, the State of Delaware argued "patrol officers [should] be subject to no constraints in deciding which automobiles shall be stopped for a license and registration check because the State's interest in discretionary spot checks as a means of ensuring the safety of its roadways outweighs the resulting intrusion on the privacy and security of the persons detained." *Id.* at 655. The Supreme Court rejected this argument, concluding:

> To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . . ."
> . . . .
>      . . . .
>      An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. . . . As *Terry v. Ohio*, [392 U.S. 1, 22 (1968)], recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Id.* at 661–63 (citations omitted).

Likewise, Bakke did not give up his constitutional right to be free from unreasonable seizure when he entered the UTV. And the statutory authority for the stop does not override Bakke's constitutional rights. *See State v. Ochoa*, 792 N.W.2d 260, 272 (Iowa 2010) ("The protections of the Fourth Amendment . . . cannot depend solely upon the status of state law; otherwise, it could be effectively repealed by ordinary legislation or executive action."). Neither Congress nor the Iowa Legislature may legalize conduct infringing on a constitutional right. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973) ("It is clear, of course, that no Act of Congress can authorize a violation of the Constitution."); *Wright*, 961 N.W.2d at 402 ("None of the departments of our state government are authorized—by bill, order, rule, judicial decision, or otherwise—to make law or legalize conduct infringing upon the minimum rights guaranteed in the Iowa Constitution.").

Conservation Officer Graves's stop of Bakke's UTV was not supported by probable cause or reasonable suspicion, and the statute giving Officer Graves authority to conduct stops in section 321I.27 cannot transform the stop into a reasonable, constitutional action. Therefore, the district court should have granted

Bakke's motion to suppress.[4]  We reverse and remand to the district court for further proceedings.

**REVERSED AND REMANDED.**

---

[4] We do not consider whether section 321I.27 is facially unconstitutional, as Bakke has not developed that argument on appeal.  *See Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 764, 766 (Iowa 2019) ("A facial challenge is one in which no application of the statute could be constitutional under any set of facts. . . .  To succeed on a facial challenge, the challenger must show that a statute is 'totally invalid and therefore, "incapable of *any valid application*."'" (citations omitted)).